Filed 3/5/14  P. v. Corona CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B245598 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA124334) |
| v. | |
| ROBERT ALFONSO CORONA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Philip H. Hickok, Judge.  Modified and, as modified, affirmed with directions.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Toni R. Johns Estaville, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Robert Alfonso Corona appeals from the judgment entered following his convictions by jury on 11 counts of forcible lewd act upon a child (Pen. Code, § 288, subd. (b)(1)) with multiple victims (Pen. Code, § 667.61, subds. (b) & (e)(5)). The court sentenced appellant to prison for 165 years to life. We affirm.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence established L. C. (L.) had three sons, Matthew, Timothy, and James. Matthew and Timothy were twins. The boys' father died in 2001. Appellant moved into the family home in Whittier in about February 2004 and married L. in March 2008. After appellant moved into the home, he helped raise the boys and disciplined them, and the discipline included use of a belt. Appellant was the primary disciplinarian. Appellant would be at home with the boys after school until L. came home from work, but in 2007, she ended her employment.

During jury argument, the prosecutor argued each count was based on one kind of sex act on one occasion, and there were multiple sex acts of the same kind.[1] We correlate below the multiple sex acts of the same kind and their pertinent counts.[2]

1. *Offenses Against Matthew (counts 1 - 3).*

During jury argument, the prosecutor indicated count 1 was based on appellant's touching Matthew's penis (i.e., appellant masturbating Matthew), count 2 on appellant's orally copulating him, and count 3 on appellant's sodomizing him.

Matthew was born in March 1995 and testified as follows. During the third grade, appellant called Matthew into appellant's room. Matthew entered and appellant closed and locked the door. Appellant lowered his pants, and appellant had Matthew masturbate

---

[1]     The prosecutor did not elect offenses, i.e., indicate a count was based upon a particular one of the multiple sex acts of the same kind. Instead, the court gave a unanimity instruction.

[2]     We hasten to add we have not set forth the facts of each and every one of the numerous lewd acts appellant committed upon a victim or had the victim commit upon appellant, or those lewd acts appellant had victims commit on each other.

him. Matthew complied because appellant caught him off guard. Appellant also masturbated Matthew (count 1). Appellant told Matthew to orally copulate him. Matthew replied he did not think he could, but appellant kept telling him to try and Matthew orally copulated him. After orally copulating appellant, Matthew would go into Matthew's room.

Matthew orally copulated appellant on more than one occasion. Matthew told him no when it went too far. It went too far when appellant sodomized him (count 3). On that occasion, appellant told Matthew to get on the bed and relax. Appellant lowered Matthew's pants and sodomized him. Matthew testified, "It sucked." Appellant sodomized Matthew on three occasions (count 3) and it hurt. The abuse ended when Matthew was in the sixth grade.[3]

Matthew testified he did the acts because appellant asked him to do them and Matthew felt he should because appellant was his stepfather. Matthew thought appellant would probably be upset if Matthew did not do what appellant asked. Matthew did not tell L. when the abuse was occurring or tell anyone at school what was happening because he did not want to get appellant into trouble. Matthew knew what was happening was wrong. Appellant was Matthew's stepfather and the only father figure Matthew had.

2. *Offenses Against Timothy (counts 4 – 8).*

During jury argument, the prosecutor indicated count 4 was based on appellant's orally copulating Timothy, count 5 on Timothy orally copulating appellant, and count 6 on appellant sodomizing Timothy. The prosecutor also indicated count 7 was based on Timothy masturbating appellant, and count 8 on appellant masturbating Timothy.

---

[3]  Neither party cites any evidence appellant orally copulated Matthew (count 2). In any event, as mentioned, the trial court gave a unanimity instruction and there is no dispute appellant committed on Matthew multiple sex acts, any one of which could suffice as a lewd act upon a child (e.g., Matthew's oral copulations of appellant).

Timothy testified as follows. When Timothy was about 11 or 12 years old, and in the third, fourth, or fifth grade, appellant called Timothy into appellant's room and asked him to lock the door. Appellant asked Timothy to lower his pants, lie down, put his arms up, and close his eyes. Timothy complied. Appellant masturbated Timothy (count 8). Appellant also orally copulated him (count 4).

Timothy also testified as follows. On Mondays through Fridays, the following would occur. Appellant would sit and watch computer pornography, call Timothy into the room, and have him lock the door. Appellant would have Timothy lower Timothy's pants, and appellant would lower appellant's pants. Appellant would masturbate Timothy (count 8) and have Timothy masturbate appellant (count 7). Appellant would also orally copulate Timothy (count 4) and have Timothy orally copulate appellant (count 5).

Timothy did not think it was okay but he did it because appellant asked him to do it. Timothy was afraid of what would happen if he did not listen to appellant. When appellant would have him do these things, or appellant would do these things to Timothy, Timothy did not say no because he was afraid. Once appellant had Timothy orally copulate him, appellant would have Timothy leave. On these occasions, L. would be at work.

One morning when appellant was going to work, he entered Timothy's room, awakened him, and carried him into his sister's room where appellant and Timothy were alone. Appellant orally copulated Timothy (count 4) and had him orally copulate appellant (count 5). The door was open and L. entered the room. She left, returned with a knife, put Timothy behind her, and pointed the knife at appellant. Timothy falsely told L. that he had asked appellant to show him how to masturbate. Timothy said this because L. would have called the police if Timothy had told her what really had happened. When Timothy later came home from school, Timothy told L. what really had happened but appellant denied it.

4

On a later occasion, appellant had Timothy orally copulate him (count 5) in L.'s room. L. was knocking on the door, appellant and Timothy opened it, but L. said nothing. Appellant and L. later went out that night. L. called Timothy and asked him what was going on, but Timothy replied nothing. Timothy protected appellant because he did not want L. to call the police and Timothy did not want to lose appellant.

Timothy also testified appellant would squeeze Timothy's buttocks for a while, then have him lie nude and face down on the bed. Appellant sodomized Timothy (count 6). Timothy felt pain and was crying while appellant sodomized him but Timothy said nothing because he was afraid of what would happen if he did. Appellant did not react to Timothy's crying but continued sodomizing him. There were more than 20 incidents of appellant sodomizing Timothy (count 6). The abuse ended in 2008. At time of trial, Timothy was in the twelfth grade.

3. *Offenses Against James (counts 9 – 11).*

During jury argument, the prosecutor indicated count 9 was based on appellant masturbating James, count 10 on appellant putting chocolate in James's mouth and having him orally copulate appellant, and count 11 on James orally copulating appellant during an occasion when James's brothers were playing with a Playstation.

James testified as follows. James was born in January 1998. When James was about seven or eight years old and in about the first grade, appellant called James into L.'s room, asked if James could massage him, and James replied yes. Appellant lied on the floor and James massaged his back.

About five minutes later, appellant told James to lie down next to him. Appellant lowered James pants and James was shocked. Appellant began masturbating James (count 9) and later had James masturbate appellant. James testified that after appellant began touching James's penis, but before James touched appellant's penis, James did not tell appellant to stop touching James's penis because James thought James would "get the belt" or receive more punishment time.

After James began masturbating appellant, James indicated to appellant that James's body belonged to James and appellant was not supposed to touch it. Appellant told James that he could leave and play. James did not tell L., his teacher, or authorities what had happened because he did not want to get appellant into trouble.

James testified about a later incident as follows. James was grounded while his brothers were playing with a Playstation. Appellant called James into the room again, asked if James wanted to play with his brothers, and James replied yes. Appellant unzipped his pants, pulled out his penis, and said, "Right here," indicating he wanted James to orally copulate him. James did so (count 11). If James did what appellant told him to do, appellant would end James's punishment and let him go play.

James orally copulated appellant as indicated above five or six times. The first time, James was grounded and appellant called him into the room James shared with Timothy. Appellant blindfolded James, put pieces of chocolate in James's mouth, then had James orally copulate appellant (count 10). During the oral copulation, appellant, using his hands, pulled James's head forward and backward. James did not try to stop appellant because James thought he would be hit with a belt or he would receive more punishment time. Typically, after appellant told James that James was grounded, he would remain grounded about two or three days, but after James orally copulated appellant, James would be free to do whatever he wanted. The abuse ended about the time L. decided to stay home from work.

4. *Additional Facts*.

During trial, James identified People's exhibit No. 1 as a photograph depicting him when he was in the third grade "around the time when right after this all stopped." At the time depicted in the photograph, and before that time, appellant was a lot bigger than James. James was then a lot smaller than he was at time of trial. At the time of the 2012 trial, James was five feet two inches tall and in the ninth grade.

6

Timothy identified People's exhibit No. 2 as a photograph depicting him in 2006 "roughly around the time that we're talking about." Timothy testified appellant was larger than Timothy when appellant asked him to do the sexual acts. Matthew identified People's exhibit No. 3 as a photograph depicting him "around the time when some of this stuff was going on." Each of the photographs was admitted into evidence. Appellant presented no defense evidence. We will present additional facts below where pertinent.

## *ISSUES*

Appellant presents related claims (1) there is insufficient evidence of force or duress supporting each conviction and (2) this court should therefore reduce each conviction to a violation of Penal Code section 288, subdivision (a), and remand the case for resentencing. He also claims (1) the trial court erred by admitting the victims' photographs into evidence, (2) the trial court erred by allowing L. to relate Matthew's accusations about appellant's sexual misconduct, (3) the abstract of judgment must be amended to reflect the parole revocation fine imposed by the trial court, and (4) appellant is entitled to one additional day of precommitment credit.

## *DISCUSSION*

1. *There Was Sufficient Evidence of Duress Supporting Appellant's Convictions.*

Appellant claims as to each of his convictions there is insufficient evidence of force or duress for purposes of Penal Code section 288, subdivision (b)(1).[4] We disagree. " 'Duress' as used in this context means 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or,

---

[4]     Penal Code section 288, subdivision (a) states, in relevant part, "[A]ny person who willfully and lewdly commits any lewd or lascivious act, . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." Penal Code section 288, subdivision (b)(1), states, in relevant part, "Any person who commits an act described in subdivision (a) by use of . . . duress, . . . is guilty of a felony. . . ."

(2) acquiesce in an act to which one otherwise would not have submitted.' [Citations.]" (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13 (*Cochran*).)

Moreover, " 'The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress.' [Citation.] Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family. [Citations.]" (*Cochran, supra*, 103 Cal.App.4th at pp. 13-14.)

"[I]n *People v. Pitmon* [(1985)] 170 Cal.App.3d 38, 47-48, 51, the court found sufficient evidence of duress despite the victim's testimony the defendant did not use force or violence and never threatened to hurt her. The court stated that 'at the time of the offenses, [the victim] was eight years old, an age at which adults are commonly viewed as authority figures. The disparity in physical size between an eight-year-old and an adult also contributes to a youngster's sense of [her] relative physical vulnerability.' (*Id.* at p. 51; [citation]; *People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 239 . . . ['Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to determining duress].)" (*Cochran*, *supra*, 103 Cal.App.4th at p. 14.)

In *People v. Veale* (2008) 160 Cal.App.4th 40, the court stated, "As the court in *Cochran* notes, 'as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present.' [Citation.] Although in the instant case, defendant was [the victim's] stepfather, rather than her father, he held a similar position of authority in [the victim's] home, which would support a finding of duress, along with [the victim's] testimony she feared defendant." (*Id.* at p. 49.)

8

There is no dispute appellant committed the crimes of lewd act upon a child (Pen. Code, § 288, subd. (a)) as alleged in counts 1 through 11. Moreover, there was substantial evidence, for example, of the following. As to all of the boys, appellant resided with them in the family home, raised them, and, as their stepfather, was the only father figure they had. He administered discipline, was the primary disciplinarian, and he used a belt. Before L. ended her employment, appellant would be at home with the boys until she came home from work.

Appellant continually sexually abused Matthew from the third grade to the sixth grade. Matthew tried to avoid other sex acts, but appellant kept telling him to try, overcoming Matthew's resistance.

Matthew found sodomy repugnant; he testified, "It sucked" and it hurt. Appellant sodomized him three times, and it is inferable a reasonable person in Matthew's circumstances would not have willingly participated in sexual acts that were painful and repugnant.

Matthew knew the acts were wrong. He did them because appellant asked him to do them and Matthew felt he should because appellant was his stepfather. Matthew thought appellant would probably be upset if Matthew did not do what appellant asked. Matthew did not tell L. because he did not want to get appellant into trouble.

Appellant continually sexually abused Timothy from about the third grade to 2008. Appellant masturbated Timothy only after appellant asked him to lock the door. Appellant had Timothy lower Timothy pants, then had him put his arms up and close his eyes, reducing Timothy's opportunity to resist.

Timothy did not think this was okay but did it because appellant asked him to do it. Timothy was afraid of what would happen if he did not listen. He did not say no because he was afraid. Once appellant had Timothy orally copulate him, appellant would have Timothy leave, thus conveying to Timothy he was free to leave only after the sex act.

9

On another occasion, Timothy was vulnerable and asleep when appellant awakened him. He carried Timothy into his sister's room where appellant and Timothy were alone, then appellant orally copulated Timothy and had him reciprocate. When Timothy falsely explained to L. that Timothy had asked appellant to show Timothy how to masturbate, appellant did not deny this, thus signaling to Timothy that appellant wanted Timothy to conceal the truth. L. would have called the police if she had known what had happened. Timothy did not want to lose appellant.

Timothy felt pain and was crying when appellant sodomized him (count 6) but Timothy said nothing because he was afraid of what would happen if he did and appellant did not react to Timothy's cries. It is inferable a reasonable person in Timothy's circumstances would not have willingly participated in painful sexual acts the person was too afraid to report.

Appellant masturbated James. James initially said nothing because he thought he would "get the belt" or receive more punishment, but he later told appellant that James's body was his own. Appellant told James he could leave, thus conveying to James he was free to leave only after the sex act. James told no one because he did not want to get appellant into trouble.

Appellant conveyed to James during the Playstation incident his freedom was conditioned upon his orally copulating appellant, and James orally copulated him. On another occasion, appellant had James orally copulate him only after blindfolding him and putting chocolate in his mouth, thereby reducing James's awareness of, and ability to resist, what was happening. When appellant made James orally copulate him, James did not try to stop appellant because James thought he would be hit with a belt or be grounded longer. Typically, once James orally copulated appellant, James's punishment would end, again conveying he was free to leave only after sex acts. Appellant cites no testimony from any of the boys in this case that appellant told a boy the boy was free not to be involved in sex acts.

10

We conclude there was sufficient evidence of "duress" within the meaning of Penal Code section 288, subdivision (b)(1) as to each of appellant's convictions. (*Ochoa*, *supra*, 6 Cal.4th at p. 1206; *Veale*, *supra*, 160 Cal.App.4th at p. 49; *Cochran, supra*, 103 Cal.App.4th at pp. 13-14.)[5]

2. *The Photographs of the Victims Were Properly Admitted Into Evidence.*

    a. *Pertinent Facts.*

Prior to opening statements and outside the presence of the jury, the prosecutor indicated he intended to use certain photographs "in opening." Appellant objected the photographs were irrelevant. The prosecutor represented the photographs depicted what the children looked like about the time of the offenses in 2003 through 2005, as opposed to what the children looked like at time of trial. The court noted trial was occurring in 2012.

The court found the photographs were not prejudicial. The prosecutor commented during his opening statement to the effect the three boys would testify that from around 2003 through 2005, "which is when these pictures are from," appellant committed horrible acts of molestation upon them. Each victim testified as to his respective photograph as reflected in the Factual Summary. After the People's presentation of evidence, the People moved that said photographs be admitted into evidence. Appellant's counsel stated, "Just the objection I made before trial." The court did not then expressly rule on that objection but admitted the photographs into evidence.

---

[5]     In light of our conclusion, there is no need to reach appellant's argument there was insufficient evidence of force, or his claim we should reduce appellant's offenses and remand for resentencing. We note *People v. Hecker* (1990) 219 Cal.App.3d 1238, a case relied on by appellant (and a decision by the same court that decided *Cochran*) has been criticized by *Cochran* and *Veale* as containing erroneous and overbroad language. We express no opinion as to whether the jury reasonably could have relied on evidence appellant used duress as to one of the victims in this case as evidence of a common design or plan to use duress as to all of them. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. 2, 403.)

b. *Analysis*.

Appellant claims the trial court abused its discretion by failing to exclude *from the evidence* People's exhibit Nos. 1 through 3 as irrelevant,[6] and under Evidence Code section 352. We assume without deciding that this issue, as distinct from the issue of whether the photographs were publishable during the prosecutor's opening statement, is preserved for appellate review. The admission of photographs of victims lies within the trial court's discretion unless their probative value is clearly outweighed by their prejudicial effect. (*People v. Ruiz* (1988) 44 Cal.3d 589, 613.) We review for abuse of discretion any claim a trial court erred in its rulings on relevance and/or Evidence Code section 352 objections. (*People v. Waidla* (2000) 22 Cal.4th 690, 717, 723-724 (*Waidla*).)

As to relevance, we have noted the total circumstances are to be considered when determining whether duress existed. (*Cochran, supra*, 103 Cal.App.4th at p. 14.) These include the age of the victim, any disparity between the size of the victim and that of the defendant, and the victim's vulnerability. Appellant concedes People's exhibit Nos. 1 through 3 were "taken approximately seven to nine years prior to trial" and depicted the boys "when they were much younger than they appeared before the jury." The jury was continually observing the more mature boys and the prosecutor was entitled to present visual evidence of how they appeared when the offenses occurred, i.e., evidence relevant to the jury's determination of whether duress existed. (Cf. *People v. Edwards* (1991) 54 Cal.3d 787, 832 (*Edwards*); *Cochran, supra,* 103 Cal.App.4th at p. 14.) Moreover, the boys' credibility was at issue and the photographs were relevant to remind the jury to consider the boys' perception of, understanding of, and reaction to, the events as boys who were much younger at the time of the offenses.

---

[6]     Appellant's relevance objection at trial was ambiguous, since it did not make clear whether appellant was objecting that the photographs were not relevant to show what the victims looked like, or objecting that what the victims looked like was irrelevant.

12

Appellant waived any Evidence Code section 352, due process, and/or fair trial issue by failing to object on those grounds. As to the merits, the photographs were apparently routine school photographs or otherwise unremarkable. (Cf. *Edwards, supra*, 54 Cal.3d at p. 832.) The court, using CALJIC No. 1.00, instructed the jury, "You must not be influenced by sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." We assume the jury followed that instruction. (Cf. *People v. Memro* (1995) 11 Cal.4th 786, 866.)

The trial court did not abuse its discretion by admitting the photographs into evidence over any relevance and/or Evidence Code section 352 objections, and no due process or fair trial error occurred. Finally, there was overwhelming evidence of appellant's guilt. Any trial court error on any relevance and/or section 352 rulings was harmless beyond a reasonable doubt. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705] (*Chapman*).)

3. *The Court Properly Received L.'s Testimony Relating Matthew's Statement.*

    a. *Pertinent Facts.*

During the People's direct examination of L., she testified that in April 2012, Matthew came home drunk, she was putting him in bed, and Matthew began telling her what appellant had done to Matthew and his brothers. The prosecutor then asked L. what Matthew told her, but appellant interrupted with a hearsay objection. The prosecutor indicated L.'s testimony was admissible under the fresh complaint doctrine, and the court overruled appellant's objection.

The prosecutor then asked L. what Matthew said, and she testified, "That [appellant] had sexually molested him and his brothers." L. could not remember the exact words Matthew used. She later testified, "The only thing that does stay in mind is he turned around and yelled at [appellant] 'pedophile.' And that's what he kept calling [appellant]." L. testified she did not talk with Matthew about "the details." Shortly after the above testimony, L. repeated her testimony about what Matthew said and his calling appellant a pedophile. Matthew told L. he was sorry he had to get drunk to tell her what

13

he needed to tell her. The trial court did not give any limiting instruction regarding L.'s above testimony.

b. *Analysis*.

Appellant claims L.'s testimony relating Matthew's statements was inadmissible hearsay and inadmissible under the fresh complaint doctrine. We disagree. Under the fresh complaint doctrine, evidence of a testifying sexual offense victim's extrajudicial complaint the sexual offense occurred may be considered by the jury for the purpose of corroborating the victim's testimony. (*People v. Brown* (1994) 8 Cal.4th 746, 758-763 (*Brown*); *People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522.)

*Brown* observed, "evidence of the fact of, and the circumstances surrounding, an alleged victim's disclosure of the offense may be admitted in a criminal trial for nonhearsay purposes . . . ." (*Brown, supra*, 8 Cal.4th at p. 763.) The nature of the crime(s) and the victim's identification of the assailant are properly included in the fresh complaint. (*People v. Burton* (1961) 55 Cal.2d 328, 351.) We review for abuse of discretion a trial court's ruling on the admissibility of evidence, including a ruling on a hearsay objection. (*Waidla, supra,* 22 Cal.4th at p. 725.)

L. testified Matthew stated to L. that appellant had sexually molested Matthew and his brothers, and she testified Matthew yelled at appellant that he was a pedophile. That term did little more than summarize Matthew's first statement. The statements identified the nature of the crimes and the assailant, and did not relate details of the crimes. We conclude the trial court did not abuse its discretion by concluding the statements were admissible under the fresh complaint doctrine. The mere fact L. repeated Matthew's statements does not compel a contrary conclusion. Even if the trial court abused its discretion, there was overwhelming evidence of appellant's guilt. Any such error was not prejudicial under any conceivable standard. (Cf. *Watson, supra,* 46 Cal.2d at p. 836; *Chapman, supra,* 386 U.S. 18, 24.)

14

Appellant argues the trial court erred by failing to give a limiting instruction concerning L.'s fresh complaint testimony. However, a trial court has no duty to give such an instruction sua sponte. (*Brown*, *supra*, 8 Cal.4th at p. 757.) Appellant argues the trial court's failure to give such an instruction violated the court's duty to give instructions on general principles of law that are commonly or closely and openly connected to the facts before the court. We disagree. That duty does not apply to a limiting instruction. (*People v. Simms* (1970) 10 Cal.App.3d 299, 311.)

Appellant alternatively argues his trial counsel provided ineffective assistance by failing to request a limiting instruction. However, the record sheds no light on why appellant's trial counsel failed to act in the manner challenged, the record does not reflect said counsel was asked for an explanation and failed to provide one, and we cannot say there simply could have been no satisfactory explanation. We reject appellant's argument. (See *People v. Slaughter* (2002) 27 Cal.4th 1187, 1219 (*Slaughter*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

Moreover, there were satisfactory explanations upon which appellant's trial counsel reasonably could have relied to decide not to request a limiting instruction. Appellant's trial counsel reasonably could have concluded such an instruction (1) would have unnecessarily called attention to the fresh complaints and (2) would have been of little significance in light of the overwhelming evidence of appellant's guilt. Moreover, that overwhelming evidence also rendered any constitutionally-deficient representation nonprejudicial. (See *Slaughter, supra,* 27 Cal.4th at p. 1219.)

4. *The Abstract of Judgment Correctly Reflects Appellant's Parole Revocation Fine*.

During the sentencing hearing, the court imposed certain fees, then stated, "A $240 restitution fund [*sic*] that has to be imposed. A *$200* [*sic*] parole revocation fee that's imposed and stayed." (Italics added.) The abstract of judgment reflects a $240 former Penal Code section 1202.4, subdivision (b) restitution fine and a *$240* former Penal Code section 1202.45 parole revocation fine.

15

Appellant does not dispute the trial court imposed a $240 restitution fine or the propriety of that fine, but argues the abstract of judgment must be corrected to reflect the amount of the parole revocation fine as $200, the amount orally pronounced by the court. Respondent argues the trial court was required to impose a $240 parole revocation fine; therefore, the abstract of judgment, that reflects a $240 parole revocation fine, need not be amended.

We agree with respondent the trial court was required to impose a parole revocation fine equal to the restitution fine. (Former Pen. Code, § 1202.45.) The court did not do so but instead imposed a $200 parole revocation fine. This was an unauthorized sentence. An unauthorized sentence may be corrected at any time. (*People v. Huff* (1990) 223 Cal.App.3d 1100, 1106.) We will modify the judgment to reflect a $240 parole revocation fine. Because the abstract of judgment reflects a $240 parole revocation fine, there is no need to amend the abstract in that respect.

5. *Appellant Is Entitled to Additional Precommitment Credit*.

Appellant was arrested on April 3, 2012, and remained in custody until the court sentenced him on December 6, 2012, a total of 248 days, inclusive. The trial court awarded a total of 284 days of precommitment credit, consisting of 247 days of custody credit and 37 days of conduct credit. Respondent concedes appellant is entitled to one additional day of custody credit. We accept the concession (*People v. Smith* (1989) 211 Cal.App.3d 523, 525-527; Pen. Code, § 2900.5, subd. (a)) and we will modify the judgment accordingly.

*DISPOSITION*

The judgment is modified by imposing a $240 former Penal Code section 1202.45 parole revocation fine, and said fine shall be suspended unless appellant's parole is revoked. The judgment is also modified by the addition of one day of custody credit pursuant to Penal Code section 2900.5, subdivision (a) resulting in a total precommitment credit award of 285 days and, as modified, the judgment is affirmed. The trial court is directed to forward to the Department of Corrections an amended abstract of judgment reflecting the above credit award modification.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:



CROSKEY, Acting P. J.



ALDRICH, J.

17