[No. E042561. Fourth Dist., Div. Two. Feb. 15, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
BRETT WARNER VEALE, Defendant and Appellant.

## COUNSEL

Warren P. Robinson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GAUT, J.**—Following a court trial, defendant Brett Warner Veale was convicted of three counts of committing a lewd act upon a child under the age of 14 by force, fear, or duress (Pen. Code, § 288, subd. (b);[1] counts 3, 4 & 5).[2] As a result, defendant was sentenced to an aggregate term of 18 years in state prison: consecutive middle terms of six years for each count pursuant to section 667.6, subdivision (d).

Defendant contends that there was insufficient evidence that he used force, fear, or duress in committing each of the counts. Defendant also argues that

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] During the trial, the court granted defendant's motion pursuant to section 1118.1 to dismiss counts 1 and 2 for sodomy by force or duress in violation of section 269, subdivision (a)(3).

Judicial Council of California Criminal Jury Instructions (2007–2008) CALCRIM No. 1111, on lewd or lascivious acts by force or fear, incorrectly states that a violation of section 288, subdivision (b) can be committed by means of fear even in the absence of a threat. We reject defendant's contentions and affirm the judgment.

## 1.   Facts

In 2002, defendant moved in with Brianna and her mother, Leea (mother). A month later mother and defendant married. The three lived with mother's parents and brother.

Shortly after defendant moved in, when Brianna was six or seven years old, defendant began molesting her. The molestation normally occurred in Brianna's or mother and defendant's upstairs bedroom, usually while mother was gone or downstairs. On one occasion defendant molested Brianna while she was in bed with defendant and mother, who was sleeping.

Defendant began touching Brianna in inappropriate places. On one occasion, when she and defendant were watching television, defendant touched her in the genital area, which Brianna referred to as "the middle part."[3] Defendant did not say anything before touching her.

According to Brianna, there were five such incidents, and maybe even more than 20. Defendant touched her genital area with his penis. It did not hurt but Brianna "felt bad" and did not like what defendant was doing. Brianna described two such incidents.

Defendant also touched Brianna's genital area with his hand, sometimes on top of her nightgown and underwear, and sometimes underneath. He did this more than five times.

One time defendant asked Brianna to touch his penis. She became angry, threw clothes around the room, and did not do it. Defendant did not ask her to do this again. Another time, defendant asked Brianna if he could put his penis in her mouth. Brianna got angry and defendant did not do it. Defendant did not ask her again to do this.

---

[3] The parties use the word, "vagina" and "vaginal area" but apparently are referring to Brianna's external genitals and genital area, because, according to the record, the touching consisted of external touching or rubbing, rather than any kind of internal penetration. The vagina is an internal organ, defined as "[t]he passage leading from the opening of the vulva to the cervix of the uterus in female mammals." (American Heritage Dict. (4th ed. 2000).) Brianna testified that defendant's penis never touched the inside of her bottom. It is unclear whether defendant touched Brianna's vagina with his hand.

In December 2004, or January 2005, mother came home and found her bedroom door locked. She unlocked the door with a knife and entered the room. Defendant jumped up from lying on top of Brianna. Mother found Brianna lying on the floor. Defendant told mother nothing was happening. Mother took Brianna out of the room and asked her if anything wrong happened. Brianna said nothing had happened.

Brianna testified she did not tell mother about the incident because she was afraid to tell her and she thought mother would not believe her. Brianna was afraid something might happen to her or mother if she told. She feared defendant would hurt her if she told, although he never said he would.

In February 2005, Brianna found under defendant's bed "nasty magazines." Brianna wrote a note to mother that defendant had "nasty magazines" and that he did "nasty stuff" to her. Brianna left the note where she knew mother, who was home, would find it. Brianna had not told anyone about the molestation.

After mother found the note, she asked Brianna what defendant had done. Because Brianna was hesitant to say anything, Brianna's grandmother, who was present, told mother to leave the room while grandmother spoke to Brianna. Mother listened outside the room and heard Brianna tell grandmother that defendant had touched her and tried to put his penis in her bottom and mouth. Brianna then told mother defendant had not succeeded in doing this.

Mother confronted defendant with Brianna's allegations. Defendant said Brianna was lying and denied molesting her. He claimed he only undressed in front of her. Mother became infuriated and started hitting defendant. She told him to leave immediately and contacted the police.

Police Detective Audrey Caldwell, an investigator in the district attorney's office, was assigned to investigate the allegations. She initially was unable to contact defendant.

On February 22, 2005, about 10 days after Brianna reported the molestation, social worker Vera Diaz, who was with the Riverside County Child Protective Services Department, interviewed Brianna. The videotaped interview was played for the jury. Brianna was seven years old at the time of the interview. Brianna stated during her interview that defendant had touched her in the genital area but had not hurt her. He started molesting her shortly after defendant first met mother and continued molesting Brianna when she was seven years old. She was afraid she would get in trouble by telling Diaz about the molestation and feared defendant was going to kill someone, although

defendant never told her he would. Brianna could not say why she feared defendant. She told Diaz about defendant's request that she put his penis in her mouth, and she became angry and threw clothes around, which caused defendant to stop. Shortly after this incident, Brianna wrote the note telling mother defendant was molesting her.

In July 2005, Detective Caldwell located defendant and briefly spoke to him on the phone. Defendant denied the molestation allegations. Caldwell interviewed defendant later in September 2005, while he was in jail for petty theft. Defendant denied molesting Brianna. He stated that while living with Brianna, he was drinking heavily and using methamphetamine, which caused him to black out. Defendant said he could have touched Brianna but did not remember doing so. He conceded he might have inadvertently touched her in an inappropriate place while they were play wrestling. Brianna also may have seen him change his clothing. Defendant claimed he kept his shorts on when changing.

At trial defendant denied molesting Brianna. Defendant testified that he believed mother was behind Brianna's allegations against him. Mother was angry at defendant because of their financial problems and because she caught him cheating on her. She also wanted him out of the house because he had a criminal record (possession of stolen property, forgery, burglary, and possession of stolen checks) and this had caused mother to lose custody of her two older children.

## 2. Sufficiency of Evidence

Defendant contends there was insufficient evidence to support his convictions for committing lewd and lascivious acts upon a child under the age of 14 years by force or duress (§ 288, subd. (b)(1)). Specifically, defendant argues there was no evidence he used force or duress.

Our review of any claim of insufficiency of the evidence is limited. "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374]; see also *People v. Hill* (1998) 17 Cal.4th 800, 848–849 [72 Cal.Rptr.2d 656, 952 P.2d 673].)

Given this court's limited role on appeal, defendant bears an enormous burden in claiming there is insufficient evidence to sustain his molestation convictions. If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) Applying this standard of review, we conclude the record discloses sufficient evidence to support defendant's convictions.

■ Under section 288, subdivision (b)(1), any person who commits a lewd or lascivious act upon a child under 14 "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony . . . ." The People's theory at trial was that defendant committed these offenses through duress premised on fear.

For purposes of section 288, subdivision (b), "duress" means " 'a direct or implied *threat* of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' [Citations.]" (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13 [126 Cal.Rptr.2d 416] (*Cochran*), italics added.) " 'The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress.' [Citation.]" (*Id.* at pp. 13–14, quoting *People v. Pitmon* (1985) 170 Cal.App.3d 38, 51 [216 Cal.Rptr. 221] (*Pitmon*); see also *People v. Cardenas* (1994) 21 Cal.App.4th 927, 940 [26 Cal.Rptr.2d 567].) "Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family." (*Cochran, supra*, at p. 14, citing *People v. Senior* (1992) 3 Cal.App.4th 765, 775 [5 Cal.Rptr.2d 14], and *People v. Schulz* (1992) 2 Cal.App.4th 999, 1005 [3 Cal.Rptr.2d 799].)

Defendant argues there was no evidence defendant used force or duress. Brianna testified defendant did not threaten her or use physical force when he committed the charged offenses. She also testified that when defendant asked her to put his penis in her mouth and, on another occasion, asked her to touch his penis, she got mad and threw clothes around the room. Defendant relented and did not make the same requests again.

The People argue there was evidence Brianna feared defendant and this, in conjunction with other factors, was sufficient to establish duress within the meaning of section 288, subdivision (b). Brianna was seven years old at the time of the molestation. When defendant molested Brianna, she was normally

alone with defendant in his or Brianna's bedroom. On at least one occasion, the bedroom door was locked. And, as Brianna's stepfather, defendant was an authority figure in the household. In addition, Brianna feared defendant and feared that if she told anyone defendant was molesting her, defendant would kill her or mother.

■    We conclude there was sufficient evidence of duress. A reasonable inference could be made that defendant made an implied threat sufficient to support a finding of duress, based on evidence that Brianna feared defendant and was afraid that if she told anyone about the molestation, defendant would harm or kill Brianna, her mother or someone else. Additional factors supporting a finding of duress include Brianna's young age when she was molested; the disparity between Brianna and defendant's age and size; and defendant's position of authority in the family. The totality of this evidence is sufficient to support a finding that defendant molested Brianna by means of duress, in violation of section 288, subdivision (b).

Citing *People v. Hecker* (1990) 219 Cal.App.3d 1238 [268 Cal.Rptr. 884] (*Hecker*) and *People v. Espinoza* (2002) 95 Cal.App.4th 1287 [116 Cal.Rptr.2d 700] (*Espinoza*), defendant argues such evidence was insufficient since there was no evidence that defendant used physical force in molesting Brianna or threatened Brianna in any way. In *Hecker*, the court concluded there was insufficient evidence of duress and therefore reduced the defendant's section 288, subdivision (b) conviction to a section 288, subdivision (a) conviction. The *Hecker* court explained that the only difference between a section 288, subdivision (a) and a subdivision (b) offense is that the subdivision (b) offense requires a finding that the molestation was committed using force or duress. (*Hecker, supra*, at p. 1249.) In the context of section 288, the concept of force and duress is not necessary to prove a lack of consent; "instead it simply serves to distinguish certain more culpable nonconsensual sex acts from others." (*Hecker*, at p. 1249.)

In *Hecker*, the defendant was convicted under section 288, subdivision (b) of having anal and vaginal intercourse with his 12-year-old stepdaughter. As in the instant case, the defendant lived with the victim and molested her when he was alone with her at their home, in the defendant's bedroom. Also, the victim testified the defendant did not use physical force. (*Hecker, supra*, 219 Cal.App.3d at pp. 1242, 1250.)

Despite these similarities, *Hecker* is distinguishable because the *Hecker* victim was five years older than Brianna and testified she was not afraid of the defendant harming her, even though she may have been "subconsciously afraid." (*Hecker, supra*, 219 Cal.App.3d at p. 1242.)

Also, while the court in *Hecker* stated that "psychological coercion" without more was insufficient to establish duress, the court in *Cochran* disagreed. In *Cochran, supra,* 103 Cal.App.4th 8, the court found the language in *Hecker* "overly broad" and explained: "The very nature of duress is psychological coercion. A threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent. We also note that such a threat also represents a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults." (*Id.* at p. 15.)

In *Cochran,* the court held that there was sufficient evidence of duress to support the defendant's conviction for violating section 288, subdivision (b), reasoning in part: "The victim was only nine years old. Cochran is her father with whom she resided. She was four feet three inches tall. He was five feet nine inches tall and outweighed her by about 100 pounds. The sexual acts occurred in the family home she shared with Cochran and her mother. Throughout the videotape, Cochran directs and coaches the victim what to do. It is clear the daughter is reluctant to engage in the activities and, at most, acquiesces in the conduct." (*Cochran, supra,* 103 Cal.App.4th at p. 15, fn. omitted.)

The *Cochran* court further stated that, "Additionally, there was the victim's trial testimony. Although she testified she was not afraid of Cochran, that he did not beat or punish her and never grabbed or forced her, she also testified she was mad or sad about what he was doing to her, that he gave her money or gifts when they were alone together, and that he told her not to tell anyone because he would get in trouble and could go to jail. [¶] This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent. [Fn. omitted.] Under these circumstances, given the age and size of the victim, her relationship to the defendant, and the implicit threat that she would break up the family if she did not comply, the evidence amply supports a finding of duress." (*Cochran, supra,* 103 Cal.App.4th at pp. 15–16.)

The instant case is similar in many significant ways to *Cochran,* although we recognize *Cochran* differs in that defendant was Brianna's stepfather, rather than her biological father, and there was no testimony defendant told Brianna that if she reported the molestation, she would break up the family. Nevertheless, the evidence is sufficient to support a finding of duress, based on Brianna's age and size; her relationship to defendant; and her testimony

that she feared defendant and feared he would harm or kill her or mother if she told anyone defendant was molesting her. Furthermore, Brianna was even younger than the victim in *Cochran*. It could be reasonably inferred that defendant threatened Brianna implicitly or explicitly, based on her fear of defendant and fear he would harm her or mother. This fear along with the other mentioned factors, is sufficient to support a finding of duress within the meaning of section 288, subdivision (b).

As the court in *Cochran* notes, "as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present." (*Cochran, supra,* 103 Cal.App.4th at p. 16, fn. 6.) Although in the instant case, defendant was Brianna's stepfather, rather than her father, he held a similar position of authority in Brianna's home, which would support a finding of duress, along with Brianna's testimony she feared defendant.

As noted in *People v. Schulz, supra,* 2 Cal.App.4th at page 1005, "[D]uress involves psychological coercion. [Citation.] Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. [Citations.] 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' [are] relevant to the existence of duress. [Citation.]" (*Ibid.*)

Defendant's reliance on *Espinoza, supra,* 95 Cal.App.4th 1287, in which the defendant molested his 12-year-old daughter, is misplaced. In *Espinoza,* which was decided before *Cochran,* the court held there was insufficient evidence of duress, reasoning: "The only way that we could say that defendant's lewd act on L. and attempt at intercourse with L. were accomplished by duress is if the mere fact that he was L.'s father and larger than her combined with her fear and limited intellectual level were sufficient to establish that the acts were accomplished by duress. . . . Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat . . . .' [Citation.] No evidence was adduced that defendant's lewd act and attempt at intercourse were accompanied by any 'direct or implied threat' of any kind. While it was clear that L. was afraid of defendant, no evidence was introduced to show that this fear was based on anything defendant had done other than to continue to molest her. It would be circular reasoning to find that her fear of molestation established that the molestation was accomplished by duress based on an implied threat of molestation." (*Espinoza, supra,* at p. 1321.)

*Espinoza* is distinguishable in that the victim in *Espinoza* was considerably older than Brianna. Because of Brianna's young age, Brianna was more

susceptible to being coerced through fear and due to defendant's position of authority. Furthermore, in the instant case, Brianna stated she not only feared defendant but she also feared defendant would kill her or mother if she told anyone defendant was molesting her. While this case is in many significant ways, similar to *Espinoza*, we conclude based on *Cochran* that there was sufficient evidence of an implied threat and thus duress.

We note *Pitmon, supra*, 170 Cal.App.3d 38, *People v. Sanchez* (1989) 208 Cal.App.3d 721, 748 [256 Cal.Rptr. 446] (*Sanchez*), and *People v. Superior Court (Kneip)* (1990) 219 Cal.App.3d 235 [268 Cal.Rptr. 1] (*Kneip*), cited by the People in support of a finding of duress, are not dispositive because they contain evidence of force or explicit threats. In *Kneip*, the court held there was duress based on evidence the defendant had explicitly threatened the victim with humiliation and coerced him by threatening to spank him with a belt if he did not cooperate. (*Kneip, supra*, at p. 239.) In *Sanchez*, the court concluded there was sufficient evidence of duress based on the defendant physically pulling the victim to require her to perform the charged molestation acts and threatening that the victim's mother would hit the victim if the victim reported the molestations. (*Sanchez, supra*, at p. 748.) In *Pitmon*, there was evidence the defendant used physical force to molest the victim, and restrained the victim when he tried to escape. (*Pitmon, supra*, at p. 51.)

*Pitmon* does, however, support a finding of duress based on factors other than force, such as age and the victim's relationship with the defendant. In *Pitmon*, the court stated that, "[A]t the time of the offenses, [the victim] was eight years old, an age at which adults are commonly viewed as authority figures. The disparity in physical size between an eight-year-old and an adult also contributes to a youngster's sense of his relative physical vulnerability. . . . These factors all bear upon the susceptibility of a typical eight-year-old to intimidation by an adult." (*Pitmon, supra*, 170 Cal.App.3d at p. 51.)

Here, viewing the evidence in its totality and assuming the trier of fact resolved all conflicting inferences in favor of the prosecution (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]), we conclude there was sufficient evidence to support the trial court's finding of duress within the meaning of section 288, subdivision (b).

### 3. Jury Instruction Challenge

Defendant contends the jury instruction on duress, CALCRIM No. 1111, as given to the jury, was defective because it stated: "An act is accomplished by fear if the child is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it."

Defendant argues that the instruction is an inaccurate statement of the law because the jury cannot find duress or fear unless there is evidence that the victim's participation was impelled by an implied threat; that is, the defendant must have taken action or said something to instill such fear. Defendant complains that the trial court failed to instruct the jury that in order to find duress, the jury must find that the defendant committed a threatening action or made a threatening statement.

We find the instruction sufficient. Section 288, subdivision (b)(1) provides any person who commits a lewd or lascivious act upon a child under 14 "by use of force, violence, *duress*, menace, or *fear* of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony . . . ." (Italics added.)

CALCRIM No. 1111 states, as to a violation of section 288, subdivision (b) based on the use of fear, that the jury must find that the defendant used the victim's fear of immediate harm as a means of molesting the victim. If the section 288, subdivision (b) offense is based on such fear, a threatening action or statement is not required.

On the other hand if the section 288, subdivision (b) offense is based on duress, a "direct or implied threat of force, violence, danger, hardship, or retribution" is required. (CALCRIM No. 1111.) The trial court properly instructed the jury on this requirement as to duress. Form jury instruction CALJIC No. 10.42 similarly differentiates between fear and duress. Defendant is confusing the definitions for fear and duress, which are two different factors by which the defendant can violate section 288, subdivision (b).

Quoting *People v. Wilkerson* (1992) 6 Cal.App.4th 1571 [8 Cal.Rptr.2d 392], defendant argues that duress or fear cannot be established unless there is evidence that "the victim['s] participation was impelled, at least partly, by an implied threat . . . ." (*Id.* at p. 1580.) This statement is taken out of context. In making this statement, the court in *Wilkerson* was discussing whether there was sufficient evidence of duress, as opposed to basing the defendant's conviction on a finding of fear. The defendant in *Wilkerson* was convicted of violating section 288, subdivision (b) based on duress founded on an implied threat of harm.

Here, we find no instructional error. CALCRIM No. 1111 provides proper instruction on the elements of a section 288, subdivision (b) offense.

#### 4. Disposition

The judgment is affirmed.

McKinster, Acting P. J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 2008, S161824. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.