Filed 6/16/15  P. v. Dominguez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO DANIEL DOMINGUEZ,<br><br>    Defendant and Appellant. | A142003<br><br>(Alameda County<br>Super. Ct. No. H54206) |

Defendant Francisco Daniel Dominguez appeals a judgment sentencing him to prison for a term of 53 years to life for molesting his daughter. He contends some of his convictions must be reduced to lesser included offenses because there is insufficient evidence that those offenses were committed with the use of duress. We disagree and shall affirm the judgment.

**Factual and Procedural History**

Defendant was charged by amended information with three counts of committing a lewd act upon a child under 14 (Pen. Code,[1] § 288, subd. (a)—counts 1, 2, and 4), aggravated sexual assault of a child under 14 by oral copulation (§ 269, subd. (a)(4)—count 3), two counts of sexual penetration by a foreign object (§ 289, subd. (a)(1)(A)—counts 5 and 6), two counts of forcible oral copulation (§ 288a, subd. (c)(2)(A)—counts 7 and 8), and sexual battery by restraint (§ 243.4, subd. (a)—count 9).

The following evidence was presented at trial:

---

[1] All statutory references are to the Penal Code.

1

The victim, D., was born in Mexico in 1995. Her parents are defendant and his wife, G. Dominguez. Defendant left the family to find work when D. was two years old, and he returned when she was about five years old. When D. was about six years old, Mrs. Dominguez brought her to the United States. Defendant arrived from Mexico some months later. The family settled in San Leandro, California, but changed residence several times. Defendant and his wife had two more daughters. At the time of trial, D. was 18 and her sisters were six and eight years old. During D.'s childhood, defendant was the primary income provider for the family. He made the rules for the household and disciplined the children.

D. was molested by defendant numerous times from age 8 through 14 or 15. D. was 14 years old when she told her mother that defendant had been touching her inappropriately. She did not disclose details, but did tell her mother in front of defendant. Defendant did not deny the allegation at the time. Mrs. Dominguez did not tell the police because she was "afraid" of her husband, who paid the rent and threatened "that he was going to hurt her in every way." Defendant subsequently told Mrs. Dominguez that she was an "accomplice" because she had failed to disclose his actions.

In 2012, during a physical examination D. reported the abuse to a nurse. She did so because she was tired of "living with this big secret inside of me and living with somebody that did it to me and having to always be reminded of—and just, this had happened to me and having to deal with it and not being able to tell no one." She then reported the abuse to the police and cooperated in making a recorded phone call to her father. In that "pretext call," D. confronted defendant about the molestation, and he apologized and asked for her forgiveness.

D. testified to each incident as follows:

**Count One: Lewd Act (§ 288, subd. (a)).**

The first incident occurred the day before she started fourth grade; she was approximately eight years old. At that time, D. was about half her father's height. D. testified that she was sleeping next to her mother when she awoke to her father standing next to the bed, touching her vagina. She pretended to be asleep. She thought it was

2

"gross" and "wasn't right," but did not then tell anyone what had happened. At that time she had a "normal" relationship with her father, who was the primary adult male figure in her life. D. looked up to him. She respected him and they did not fight.

**Count Two: Lewd Act (§ 288, subd. (a))**

The second incident occurred when D. and her mother were taking a nap mid-day when she awoke to her father touching her vagina under her skirt. She began to cry because she was scared and her crying woke her mother. Defendant told her mother that she was crying because she hurt her finger. She wanted to tell her mother that her father was lying but did not do so because she was afraid it would happen again. She felt she could not tell anyone.

**Count Three: Aggravated Sexual Assault (§ 269, subd. (a)(4))**

The next incident occurred in 2005 or 2006 when D. was nine or 10 years old. She was lying on the corner of her parents' bed when her father pulled down her pants and licked her vagina. She did not fight him or say anything, but she did not want him there. At that age, she respected her father, abided by his rules, and did not argue with him. She did not tell anyone. She respected her father, and although she "didn't think it was right," she "didn't question him because he was [her] father."

**Count Four: Lewd Act (§ 288, subd. (a))**

The next incident occurred in 2007 or 2008 when D. was 11 to 13 years old. D. recalled being on the telephone and her father coming from behind and hugging her, making a "humping motion." Defendant made it seem that he was playing with her, but she did not feel comfortable given prior events.

**Counts Five and Six: Sexual Penetration by a Foreign Object (§ 289, subd. (a)(1)(A))**

The next incident occurred between 2008 and 2011 when D. was between 13 and 15 years old years old. Her father came into the bedroom during the day and he closed the curtains. He unzipped her pants and put his hand down her underwear, then rubbed and put his fingers in her vagina. She did not resist or tell anyone. D. did not try to resist "because he was [her] dad" and she "didn't think [she] could have." When asked if she felt like she had a choice, she replied, "Not exactly." By that time, D. was a teenager and

3

she and her father were arguing a lot. She felt "resentment towards him" "[b]ecause of the things that he was doing to [her]" but she did not confront him about it.

On another occasion, D. was lying on her bed in shorts. Her father came into the room, pushed her shorts to the side, and again rubbed and put his fingers in her vagina. Again, she did not resist "because it was [her] dad" and she "didn't think [she] had the choice."

**Counts Seven and Eight: Forcible Oral Copulation (§ 288a, subd. (c)(2)(A))**

D. also testified to two incidents of oral copulation that occurred when she was between thirteen and fifteen. During the first incident, she was lying on her bed in the evening and her father came into the room, pulled down her pants and orally copulated her. At one point he stopped, left the room to "check on the living room" but then returned, closed the door and resumed orally copulating her.

At the time of the second incident, D. remembered being on the phone. She tried to be "stiff like [she] didn't want that to happen." She "didn't want him to open [her] legs," so she clenched them together. She did not kick, scream, or run for help because she did "[n]ot really" believe she could.

**Count Nine: Sexual Battery (§ 243.4, subd. (a))**

Finally, D. testified to an incident in which her father slid his hand under her shirt and bra and massaged her breasts while he rubbed her vagina. She was not able to move "[b]ecause he had one hand on [the] lower part of [her] body and the other hand on [her] chest."

The jury found defendant guilty on counts 1 through 8. The jury could not reach a unanimous verdict on count 9, and that count was subsequently dismissed by the prosecutor.

Defendant was sentenced to prison for a term of 53 years to life. The term consists of 15 years to life on count 3, consecutive eight-year upper terms on counts 5, 6, 7, and 8, and consecutive two-year terms (one-third the midterm) on counts 1, 2, and 4. Defendant received 805 days credit for time served. Defendant timely appealed from the judgment.~ (2 CT 347)~

4

**Discussion**

Defendant contends there was insufficient evidence to support his conviction on count 3 for aggravated sexual assault, on counts 5 and 6 for sexual penetration by a foreign object and on counts 7 and 8 for forcible oral copulation. Defendant argues that there was no evidence he used duress during the commission of these crimes and that, absent duress, the offenses must be reduced to their lesser included offenses for which duress is not an element.

*A. Standard of Review*

We are limited in our review of a claim of insufficiency of the evidence. " 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citations.]' [Citations.] [¶] Given this court's limited role on appeal, defendant bears an enormous burden in claiming there is insufficient evidence to sustain his molestation convictions. If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves." (*People v. Veale* (2008) 160 Cal.App.4th 40, 45-46.)

*B. Applicable Law*

Each of the offenses that defendant challenges requires the presence of one of several aggravating factors. People's theory at trial was that defendant committed each of these offenses with the use of duress, one such aggravating factor. Under section 289, subdivision (a)(1)(A), the offense charged in counts 5 and 6, "[a]ny person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years." Under section 288a, subdivision (c)(2)(A), charged in counts 7 and 8, "[a]ny person who commits an act of oral copulation when the act is

accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years." Finally, under section 269, subdivision (a)(4), charged in count 3, "any person who commits [oral copulation, in violation of section 288a, subdivision (c)(2)(A)] upon a child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child."

" 'Duress' has been defined as 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' [Citation.] . . . [D]uress involves psychological coercion. [Citation.] Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. [Citations.] 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress.' " (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.) " 'Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.' " (*People v. Veale*, *supra*, 160 Cal.App.4th at p. 46, quoting *People v. Cochran* (2002) 103 Cal.App.4th 8, 14.)

Defendant understandably relies heavily on two cases in which a father's molestation of his daughter was held to have been committed without the use of duress. In *People v. Hecker* (1990) 219 Cal.App.3d 1238, the court found that there was insufficient evidence of duress where there was no evidence that the defendant expressly or implicitly threatened the victim. The victim admitted she was never consciously afraid defendant would harm her and testified that with the exception of defendant's pushing her head down during the act of oral copulation, he never used physical force. Although the victim stated she felt "pressured psychologically" and was "subconsciously afraid,"

6

there was no evidence defendant was aware of and sought to take advantage of such fear. (*Id.* at p. 1250.) The *Hecker* court observed, " 'Psychological coercion' without more does not establish duress. At a minimum there must be an implied threat of 'force, violence, danger, hardship or retribution.' " (*Id.* at pp. 1250-1251.)

*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319-1320 relied heavily on *Hecker* in finding that there was insufficient evidence of duress. The court in *Espinosa* explained, "The only way that we could say that defendant's lewd act on L. and attempt at intercourse with L. were accomplished by duress is if the mere fact that he was L.'s father and larger than her combined with her fear and limited intellectual level were sufficient to establish that the acts were accomplished by duress. . . . Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat. . . .' [Citation.] No evidence was adduced that defendant's lewd act and attempt at intercourse were accompanied by any 'direct or implied threat' of any kind. While it was clear that L. was afraid of defendant, no evidence was introduced to show that this fear was based on anything defendant had done other than to continue to molest her. It would be circular reasoning to find that her fear of molestation established that the molestation was accomplished by duress based on an implied threat of molestation." (*Id.* at p. 1321.)

Although admittedly somewhat analogous to the facts in this case, as discussed below, distinctions can be drawn between the facts in both *Hecker* and *Espinoza* and those in the present case. More importantly, the language and reasoning in both cases have been questioned and undermined by subsequent decisions.

First, in *Cochran* the court found the language in *Hecker* that psychological coercion without more does not establish duress was overly broad. (*People v. Cochran*, *supra*, 103 Cal.App.4th at p. 14.) The court explained, "The very nature of duress is psychological coercion. A threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent. We also note that

7

such a threat also represents a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults.' " (*Ibid.*)

In *Cochran* the court found sufficient evidence of duress based on the facts that the victim was only nine years old and defendant was her father. (*People v. Cochran*, *supra*, 103 Cal.App.4th at p. 14.) The court also cited the victim's behavior on a videotape of the abuse in which defendant "directs and coaches the victim what to do" and the victim "engages in the conduct only because she is directed to do so" and "as a matter of compliance with parental authority." (*Id*. at p. 15.) At trial, the victim testified she was not afraid of her father, that he did not beat or punish her and never grabbed or forced her, but she also testified she was mad or sad about what he was doing to her, that he gave her money or gifts when they were alone together, and that he told her not to tell anyone because he would get in trouble and could go to jail. (*Ibid*.) The court concluded, "This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent. Under these circumstances, given the age and size of the victim, her relationship to the defendant, and the implicit threat that she would break up the family if she did not comply, the evidence amply supports a finding of duress." (*Id*. at pp. 15-16, fn. omitted.) The court also noted "Neither the trial court's ruling nor our ruling on appeal holds that the parent/child relationship, as a matter of law, establishes force or duress. Nonetheless, as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present. This conclusion does not eliminate the distinction between subdivisions (a) and (b) of section 288; those subdivisions may be violated by persons other than the child's parent or one having parental authority and under circumstances where the victim truly consents, e.g., a 13-year-old girl consenting to engage in sexual acts with her boyfriend." (*Cochran,* p. 16, fn. 6.)

In *People v. Veale*, *supra*, 160 Cal.App.4th at page 48, the court relied on *Cochran* in finding that substantial evidence of duress supported defendant's conviction. In that

8

case, the victim, who was seven years old when the molestation began, testified that her stepfather did not threaten her or use physical force when he committed the charged offenses but that she feared defendant and feared that if she told anyone defendant was molesting her, defendant would kill her or her mother. (*Veale,* pp. 46-47.) The court held that the evidence supported a reasonable inference that "defendant made an implied threat sufficient to support a finding of duress, based on evidence that [the victim] feared defendant and was afraid that if she told anyone about the molestation, that defendant would harm or kill [the victim], her mother or someone else. Additional factors supporting a finding of duress include [the victim's] young age when she was molested; the disparity between [the victim] and defendant's age and size; and defendant's position of authority in the family." (*Id.* at p. 47.)

Here, the evidence at trial established that defendant repeatedly molested D. beginning when she was only eight years old. Defendant's molestations took place in the family home. Defendant is the victim's father and he occupied a position of authority in the family. He handled disciplinary matters and was responsible for the financial support of the family. Although defendant did not expressly threaten D., his actions reasonably support an implied threat that there would be adverse consequences if she told her mother. During the second incident when D.'s crying woke her mother, defendant's lie about D.'s finger made it clear that she should not tell her mother what was happening.[2] D. began arguing more with her father as she became a teenager, but at the time of the early incidents she had a "normal" and respectful relationship with her father that made her feel like she had "no choice" but to comply. There certainly was no evidence of consent or indication that D. complied for any reason other than submission to defendant's parental authority. Even with respect to the later incidents, when D. was between thirteen and fifteen, D. testified that she felt that she could resist defendant only

---

[2] Although defendant made this comment in the course of the conduct underlying count 2, which did not require a showing of duress, it preceded the conduct that formed the basis of the subsequent counts that did require a showing of duress and, thus, was relevant to whether duress accompanied the later incidents.

by stiffening her body and clenching her legs, conduct which he physically overcame as he continued to molest her. (See *People v. Schulz*, *supra*, 2 Cal.App.4th at p. 1005 ["Physical control can create 'duress' without constituting 'force.' "].) It was only later when Dalia was able to resist defendant's authority that the abuse ceased. All of these circumstances support the reasonable inference that Dalia's acquiescence in defendant's molestation was the result of duress she experienced when confronted with her father's demands.

As in both *Cochran* and *Veale,* we find the language in *Hecker*, and in *Espinoza* to the extent it relied on *Hecker*, overbroad. *Hecker* and *Espinoza* are also factually distinguishable based on the considerable difference in the victims' ages. The victims in *Hecker* and *Espinoza* were 12 or 13 years of age when molested, while Dalia's molestation began when she was only eight years of age. Because of Dalia's young age, she undoubtedly was more susceptible to coercion through fear and acceptance of her father's position of authority. In short, there is no basis to disturb the jury's finding that Dalia was molested by defendant under duress.

### Disposition

The judgment is affirmed.

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.

10