Filed 3/29/22  P. v. Thomas CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JEFFREY ANTHONY THOMAS,<br><br>　　　Defendant and Appellant. | B317246<br><br>Madera County<br>Super. Ct. No. MCR050285 |

APPEAL from a judgment of the Superior Court of Madera County, Mitchell C. Rigby, Judge.  Affirmed in part, vacated in part, and remanded for resentencing.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Ross K. Naughton and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted Jeffrey Anthony Thomas of two sex crimes against his stepdaughter. Thomas claims insufficient evidence supports one of his convictions. He also seeks reversal based on an instructional issue our Supreme Court already has decided against him. We affirm Thomas's convictions. However, we vacate his sentence and remand the matter for resentencing in light of recent sentencing legislation. We also direct the trial court to adjust the fees Thomas owes. Undesignated statutory references are to the Penal Code.

I

In 2015, an information charged Thomas with various sex crimes against his stepdaughter, Brooke. The information had five counts.

After eight days of testimony, a jury found Thomas guilty of committing a forcible lewd and lascivious act upon a child under 14 (§ 288, subds. (a) & (b)(1)) (count 1) and committing an earlier lewd and lascivious act on this child (§ 288, subd. (a)) (a lesser included offense of count 4). The trial court sentenced Thomas to 18 years in state prison, composed of the upper term of 10 years for the first count and the upper term of eight years for the latter count. The court also imposed various fines and fees, some of which we discuss below.

Thomas argues insufficient evidence supports count 1, so we focus on this count and related facts. The count concerns events on November 12, 2014, when Brooke was 11. We provide some background before delving into these events. We largely omit contrary facts. Our job in appeals of this kind is to look for substantial evidence supporting the verdict, not to resolve evidentiary conflicts. (See *People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)

## A

Thomas married Brooke's mother Sara in April 2011. Brooke was seven at the time. She and her three brothers called Thomas "Dad."

Over the years, the children and Sara witnessed Thomas's temper and his violence. Brooke reported Thomas spanked her and left bruises; he "slaps and kicks and punches"; once he punched her in the side; he used a belt on her brothers; and he would punch doors and walls.

One of Brooke's brothers testified Thomas was threatening at times, and he would hurt or assault the stepchildren when he got angry. The boy said Thomas "choked out" his older brother with a pole once; the brother confirmed it. The older brother also testified Thomas would punch holes in doors sometimes and was "pretty scary" when mad.

According to Sara, Thomas could be violent, aggressive, threatening, and verbally abusive. Sometimes he was physically abusive. In 2013, Thomas kicked her during an argument. In 2012, police arrested Thomas after Sara found him on top of Brooke. Brooke had red marks on her neck and claimed Thomas choked her. Thomas denied it.

## B

On November 12, 2014, after returning home from work, Sara heard a sound that was part-laugh, part-scream. It came from Brooke's room. Sara went to investigate, opened the bedroom door, and found Thomas and her daughter on the floor. Brooke was on her back. Her knees were bent, and her shorts and panties were down. Thomas was bent over Brooke in between her legs with his head by her genitals. Sara said

3

something to the effect of, "What the fuck is going on in here?" and "Why are her pants off?"

Brooke seemed nervous and scared, and her eyes welled with tears. Thomas said nothing happened and Brooke had set him up. He claimed he was just tickling her. Then he and Sara argued.

At first, Brooke said Thomas was tickling her because she did not want to get him in trouble. But eventually she told her mother Thomas had been licking her and had done this before.

Thomas punched a hole in the bedroom door. He accused Brooke of lying and said he was going to kill her and her family. He grabbed Brooke's ponytail and jerked her backwards, making her cry. He later told the boys Brooke was a liar and was breaking up the family; now they would not have a dad again.

Brooke described details about that night. She got in trouble and was in her room. Thomas came in and told her to get off her bed. She went to the floor "[b]ecause he's done it for so long, that I knew to just lay on the floor." Thomas pulled her pants down and licked her vagina. She pulled her pants up, worried her mother would catch them. Thomas then tickled her, making her laugh, and pulled her pants back down. He kept licking her vagina until Sara came in.

Brooke's brothers did not see what happened in her bedroom. Some of them reported hearing things consistent with what we have described. The brothers felt Brooke lied and got in trouble a lot and their mother also lied. One brother felt Brooke tried to get back at Thomas for getting her in trouble.

C

There had been other incidents besides the one in November 2014. Brooke described some of them to her mother, to

4

a detective, to a child forensic interviewer, and to others.  A number of interviewers testified at trial, and the jury heard several recorded interviews.  Sara, Brooke, and Brooke's three brothers also testified.  Thomas did not.

Brooke said it started when she was 10.  Thomas had her watch a movie with naked people in it.  Later that night, he came to her room, pulled down her pants, and took pictures of her with his phone.

Thomas first licked her vagina when she was 10, and he did it many times thereafter.  He made Brooke lick his penis multiple times and made her shower with him more than once.  He told Brooke not to tell her mother and another time said, "don't tell anyone."

Thomas did these things when Sara was at work.  He would make Brooke's brothers leave the house and go play at the park or ride their bikes.

Brooke's brothers corroborated that Thomas would send them to the park or out for a walk while he stayed behind with Brooke.  One brother observed, upon returning home, that Brooke and Thomas "would always be in towels and their hair would be wet."  Once he saw them both walk out of the bathroom with wet hair.  He told an investigator he never said anything about it because he did not want to get killed by Thomas.

Brooke testified she never felt safe being alone with her stepfather.  She felt she could not get away when he licked her vagina and when he would tell her to lick his penis.  She thought he would hurt her if she tried to get away "[b]ecause he's always hurt me and my family."  When she tried to move her head away from his penis, he "grabbed [her] head and put it back to his penis."  She was afraid of him.

5

Similarly, Brooke told an investigator she showered with Thomas, even though she knew she would get in trouble if her mother caught her, "because sometimes he takes his anger out and punches holes in the wall. [¶] . . . [¶] And I didn't want that to happen."

On cross-examination, Brooke admitted she once said the worst thing Thomas did to her was punch her. This was worse than his licking her vagina, she later explained, because his punches left bruises and people at school would ask about them. "But when he would lick my vagina, nobody would know."

## II

On appeal, Thomas does not challenge the jury's findings that he committed lewd acts. Rather, he contends there is insufficient evidence he used force or duress on November 12, 2014. The evidence, he says, shows Brooke "merely acquiesced" to his "overtures."

In reviewing claims of insufficiency of evidence, we examine the record in the light most favorable to the prosecution. We discern whether there is substantial evidence from which any rational trier of fact could find the elements of the crime beyond a reasonable doubt. And we presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. (*Zamudio*, *supra*, 43 Cal.4th at p. 357.)

Under section 288, subdivision (b)(1), a defendant who commits a lewd or lascivious act upon a child under age 14 "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person" is guilty of a felony.

"Duress" means a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce a reasonable

6

person of ordinary sensibilities to perform an act which otherwise would not have been performed or acquiesce in an act to which one otherwise would not have submitted. (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1023.) In making this assessment, courts consider the total circumstances, including the victim's age and relationship to the defendant, the relative vulnerability of the victim, threats to harm the victim, and physically controlling a victim who resists. (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072 (*Thomas*).) "When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases." (*Id.* at pp. 1072–1073.)

Substantial evidence supports the jury's finding that Thomas used duress against Brooke. We need not reach the issue of force.

At the time of this incident, Brooke was 11. Thomas was 45. He was her stepfather and an authority figure who disciplined her. Thomas had molested her in the family home over the course of a year. He had forced her to orally copulate him, even when she tried to pull away. He had warned her to keep quiet. He was violent with Brooke and her family. In short, Thomas gave Brooke reason to fear him, and she did fear him.

A rational jury could find from these circumstances that Thomas used duress to accomplish the lewd acts on November 12, 2014. (See *Thomas*, *supra*, 15 Cal.App.5th at p. 1073 [jury could reasonably find father's continual beatings constituted an implied threat of violence or danger if his daughter did not submit to his sexual abuse]; *People v. Veale* (2008) 160 Cal.App.4th 40, 44, 47 (*Veale*) [testimony that stepdaughter feared her stepfather supported finding of duress].)

7

Thomas argues there was no evidence of a threat to Brooke preceding his lewd acts, and an after-the-fact threat does not suffice. His argument ignores the extensive evidence outlined above of his violence before the November 2014 incident. The evidence supports a reasonable inference Thomas made an implied threat of force or violence if Brooke did not submit to him. That suffices. (See *Veale*, *supra*, 160 Cal.App.4th at p. 51; see also *Thomas*, *supra*, 15 Cal.App.5th at p. 1074 ["Threats may be inferred from conduct and even by silence."].)

Brooke's various reports of Thomas's actions were not entirely consistent, but this is of no moment in our review. For example, once Brooke said nothing happened in the shower; but then she testified Thomas licked her there. These sorts of inconsistencies do not warrant reversal. We reverse only if it appears there is insufficient evidence to support the verdict under any hypothesis. (*Zamudio*, *supra*, 43 Cal.4th at p. 357; see also *id.* at p. 358 [no reversal where the circumstances reasonably justify the jury's findings but also could support a contrary finding].) There was sufficient evidence here.

### III

Thomas argues both of his convictions should be reversed because the trial court instructed the jury with CALCRIM No. 1191B, which violated his constitutional rights by allowing the jury to use proof of one charged crime to infer he committed other charged crimes.

Thomas acknowledges we are bound by precedent to conclude otherwise, citing *People v. Villatoro* (2012) 54 Cal.4th 1152, but invites us to disagree with our Supreme Court.

We follow precedent, as we must, and reject Thomas's argument. (See *People v. Meneses* (2019) 41 Cal.App.5th 63, 68 [upholding CALCRIM No. 1191B after a similar challenge].)

IV

More than one year after the appellate briefing concluded, Thomas filed a supplemental brief arguing we must remand his case for resentencing and strike certain fees from the judgment. The prosecution concedes both issues.

Regarding sentencing, the trial court imposed the upper terms on both counts for a total of 18 years after finding "the circumstances in aggravation do preponderate and support the imposition of the aggravated term for the counts." However, Senate Bill No. 567 (2021–2022 Reg. Sess.), which became effective January 1, 2022, amended section 1170 and generally makes the middle term the presumptive sentence. Under the new law, a court cannot choose upper terms based on aggravating factors that were not found true beyond a reasonable doubt at trial or admitted by the defendant, neither of which happened here. (See § 1170, subd. (b)(1) & (2), added by Stats. 2021, ch. 731, § 1.3.) The parties agree the new law applies retroactively. Thus, the case must be remanded for resentencing consistent with the changes to section 1170, subdivision (b). (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039.)

Regarding fees, Thomas contends any unpaid portion of the felony presentence report fee ($750) and the booking fee ($108.19) reflected in the judgment must be stricken under Assembly Bill No. 1869 (2019–2020 Reg. Sess.), which became effective July 1, 2021. This bill eliminated certain administrative fees and any related outstanding debt. (See *People v. Greeley* (2021) 70 Cal.App.5th 609, 625–626.) The prosecution agrees it applies to

9

the fees Thomas identifies.  Accordingly, any unpaid balance of these fees should be vacated.  (See *id.* at pp. 626–627.)

V

On the initial submission date, Thomas sought to file another supplemental brief raising a new sentencing issue.  We permitted the filing and ordered additional briefing.

Thomas argues the trial court erred in imposing full consecutive sentences under section 667.6, subdivision (d), and subdivision (c) of that section also does not permit consecutive sentencing here.  The prosecution concedes both issues.  We agree.  The case must be remanded for resentencing on this ground as well.

On remand, the trial court may not impose consecutive sentences under section 667.6, subdivision (c) or (d).

**DISPOSITION**

We vacate Thomas's sentence and remand this matter for resentencing.  We also vacate any unpaid balance of Thomas's felony presentence report fee and booking fee.  The amended abstract of judgment following resentencing should reflect this vacatur.  We otherwise affirm.


WILEY, J.

We concur:


GRIMES, Acting P. J.


STRATTON, J.

10