Filed 4/13/21  P. v. Brown CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>COLIN LAMONT BROWN,<br><br>        Defendant and Appellant. | E072621<br><br>(Super. Ct. No. RIF1602947)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Bambi J. Moyer, Judge.

Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Heather B.

Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

# INTRODUCTION

A jury convicted defendant and appellant, Colin Lamont Brown, of committing two counts of lewd and lascivious acts upon a child under the age of 14 (Pen. Code,[1] § 288 subd. (a); counts 1 & 2), three counts of forcible oral copulation of a child under the age of 14 (§§ 288a, 269, subd. (a)(4); counts 3-6), four counts of forcible sexual penetration of a child under the age of 14 (§§ 269, subd. (a)(5), 289, subd. (a); counts 7-10), and 10 counts of forcible lewd and lascivious acts upon a child under the age of 14 (§ 288, subd. (b)(1); counts 11-20). The trial court sentenced defendant to 320 years, consisting of consecutive terms of 25 years to life on counts 1 and 2, and consecutive terms of 15 years to life on counts 3 through 20.

On appeal, defendant argues: (1) the trial court erred by denying his motion for a new trial based on newly discovered evidence related to one of the victim's credibility; (2) insufficient evidence supports his convictions on counts 11 through 20; (3) the trial court erroneously imposed separate sentences on counts 11 through 20; (4) the trial court erroneously imposed consecutive sentences on counts 11 through 20; and (5) the trial court erroneously imposed fines and fees after finding that defendant could pay them. We reject defendant's contentions and affirm the judgment.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

## II.

## FACTS

When R.H. was nine years old, she lived at her great-grandparents' home. Defendant, R.H.'s granduncle, periodically lived at the house and slept on a couch in the garage at the time.

R.H. went into the garage to get some clothes. Defendant told R.H. to sit down on the couch next to him. After R.H. complied with defendant's request, defendant touched her breast, sucked her breast, put his hand on her buttocks over her clothing, and then gave her some candy. R.H. left the garage and later told her mother and cousin about what defendant did.

N.B., defendant's niece, lived with her grandparents (R.H.'s great-grandparents), while defendant was living there. When N.B. was eight or nine years old, defendant asked her to wash his hair. After N.B. finished washing defendant's hair in the bathroom, he lifted up her shirt, and touched and sucked her breast. Defendant also touched N.B.'s groin area over her clothing. N.B. was scared, but did not tell anyone about what defendant did because she was embarrassed.

Defendant abused N.B. numerous times in the ensuing years. On several occasions, he touched N.B.'s breast and vagina, digitally penetrated her four times, and orally copulated her six to 10 times. He once asked N.B. to touch his penis. When she refused, he put his penis in chocolate ice cream, told her to open her mouth, and then stuck his penis in her mouth.

N.B. did not want to participate in any of the sexual acts with defendant, but thought she had no choice. N.B. felt like defendant "made [her] do it." Defendant repeatedly told her not to tell anyone because he did not want her to get into trouble. Defendant told N.B. that she would "get in trouble because [she] liked it." She often cried when defendant molested her. Defendant told her to say she "ran into the wall" if anyone asked why she was crying.

## III.

## DISUCSSION

A. *The Trial Court Properly Denied Defendant's Motion for a New Trial*

Defendant contends the trial court erroneously denied his motion for a new trial based on newly discovered evidence related to R.H.'s credibility. We disagree.

About two months before the jury returned its verdicts, the Department of Child and Family Services (DCFS)[2] opened an investigation into sexual abuse allegations R.H. made against a family member. As part of the investigation, the accused relative and defendant's sister, C.W., who is D.H.'s mother, submitted declarations stating that R.H.'s allegations were not true and that DCFS determined the allegations were unfounded. The matter was discussed during a detention hearing two days after the jury convicted defendant. Defendant's counsel received portions of the hearing transcript about a month after defendant was convicted, which prompted his motion for a new trial.

---

[2] The record is unclear as to which county's "Department of Child and Family Services" investigated and reported on the matter.

Defendant argued that R.H.'s allegedly false accusations were newly discovered evidence that undermined her credibility and warranted a new trial. The trial court denied the motion on two grounds. First, R.H. admitted at trial to twice falsely accusing other family members of molesting here, and two of her family members testified that she was a "habitual liar." The trial court reasoned that other evidence undermining her credibility likely would not have changed the jury's verdicts. Second, the trial court found that the newly discovered evidence could have been discovered before trial because DCFS began its investigation into R.H.'s accusations against her relative before defendant's trial ended. The trial court therefore found that defendant reasonably could have discovered the evidence before the jury began deliberating.

"A new trial motion based on newly discovered evidence is looked upon with disfavor." (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1151.) A new trial is not warranted when it is not probable that the newly discovered evidence would have produced a different result. (*People v. Delgado* (1993) 5 Cal.4th 312, 328.) It is also not warranted when the defendant could have discovered and produced the newly discovered evidence at the trial. (*People v. O'Malley* (2016) 62 Cal.4th 944, 1017.) "'"'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.'"'" (*People v. Howard* (2010) 51 Cal.4th 15, 42-43.)

Defendant contends the trial court erroneously denied his motion for a new trial because the evidence about R.H.'s allegedly false accusations against a different family

member "destroyed" her credibility. During the trial, however, defendant elicited extensive testimony that undermined R.H.'s credibility. First, R.H. admitted to twice making false accusations against other family members. She testified that she falsely accused D.H.'s boyfriend of touching her inappropriately and that she did so as "a way to get rid of him." She testified that she told her grandmother that she had lied about D.H.'s boyfriend touching her. R.H. also testified that she also falsely accused her cousin of touching her inappropriately.

Second, C.W., defendant's sister and D.H.'s mother, testified that she had lived with R.H. for several years and thought R.H. "lie[d] a lot." According to C.W., R.H. routinely told her things that were not true. In C.W.'s view, R.H. lied because she liked the attention. C.W. told R.H. that "all attention is not good attention" and would urge her to tell the truth, yet R.H. "would continue to lie." For instance, C.W. testified that R.H. admitted she lied to C.W. for several years that D.H.'s boyfriend touched her inappropriately.

Third, defendant's niece and R.H.'s cousin, Z.R., similarly testified that she believed R.H. to be a liar. Z.R. explained that she had lived with R.H. for a few months and thought "[s]he lied a lot. She's a liar." According to Z.R., R.H. lied "[a]ll day, every day about small stuff, big stuff, just anything," and that she "would lie about anything." Z.R. claimed that R.H. falsely accused Z.R.'s son of throwing R.H. on the ground and telling her "they were going to do nasty stuff." Z.R. testified that R.H. later admitted that she was lying and that she did so because she was mad at Z.R.'s son.

6

When assessing R.H.'s credibility, the jury necessarily considered R.H.'s admissions about twice falsely accusing family members of touching her inappropriately and C.W.'s and Z.R.'s opinions that R.H. is a habitual liar.  Despite this evidence casting doubt on R.H.'s credibility, the jury still believed her accusations against defendant were true.  It is thus not probable that additional evidence that R.H. falsely accused another family member of molesting her would have led to a more favorable verdict for defendant.  (*People v. Delgado*, *supra*, 5 Cal.4th at p. 328.)

Defendant relies on the principle that newly discovered evidence that "destroys" the credibility of the prosecution's main witness may warrant a new trial.  For instance, in *People v. Huskins* (1966) 245 Cal.App.2d 859, the prosecution's "sole adult witness," the mother of the allegedly abused children, accused her husband of molesting their children.  After he was convicted, defense counsel learned that defendant's wife had "had instituted civil commitment proceedings against her own husband . . . accusing him of being a sex pervert who had attacked his own daughter and had performed sex acts with animals," but her accusations were never proven.  (*Id*. at p. 861.)  The wife was found to be suffering from "paranoid schizophrenia" and was committed to a medical facility for her mental health issues for a year and a half after attempting suicide.  (*Id*. at pp. 861-862.)  Defense counsel moved for a new trial because he "never had an opportunity at the criminal trial to cross-examine [the wife] about the charges she had made against her husband, her history of mental illness, and her commitment to a mental hospital, or to

7

develop the theory that . . . to serve her own purposes [she] had concocted the charges against [defendant] in order to keep his children in her family." (*Id*. at p. 863.)

The *Huskins* court held the trial court erroneously denied defendant's motion for a new trial. (*Huskins*, *supra*, 245 Cal.App.3d at p. 864.) The court found the "exceptional" circumstances and "unusual facts" of the case warranted a new trial because the newly discovered evidence raised "grave doubts about [the wife's] veracity and credibility," and the defense never had a chance to cross-examine her about her credibility issues. (*Id*. at pp. 863-864.)

Here, however, defendant offered significant evidence to impeach R.H's credibility. She admitted to falsely accusing her sister's boyfriend and another relative of molesting her, two witnesses characterized her as a habitual liar, and defense counsel cross-examined R.H. on these issues. And, unlike the wife in *Huskins*, there was no evidence that R.H. had mental health issues that affected her credibility. Nor was there any evidence that R.H. accused defendant "to serve her own purposes." (*Huskins*, *supra*, 245 Cal.App.3d at p. 863.) In short, the newly discovered evidence about R.H.'s allegedly false accusations about another family member was unlikely to "destroy" R.H.'s testimony such that defendant might have obtained a better result if the jury considered the evidence.

In any event, the trial court did not abuse its discretion by denying defendant's motion for a new trial on the alternative ground that defendant could have obtained the newly discovered evidence during the trial. In her declaration in support of defendant's

8

motion for a new trial, C.W. stated that she received DCFS's "report after [defendant's] trial had already started, but the case was not over."  Given that C.W. was a key defense witness, the trial court reasonably found that defendant could have found and produced the newly discovered evidence about R.H.'s additional allegedly false accusations about another family member during the trial.  The trial court therefore did not abuse its discretion in denying defendant's motion for a new trial.  (See *People v. O'Malley*, *supra*, 62 Cal.4th at pp. 1016-1017 [motion for a new trial based on newly discovered evidence properly granted only if the movant ""'could not with reasonable diligence have discovered and produced it at the trial'""].)

B.  *Substantial Evidence Supports Defendant's Convictions for Counts 3 Through 20*

Defendant contends his convictions for counts 3 through 20 for his offenses against N.B. must be reversed because insufficient evidence showed that he committed the offenses with force or duress.  We disagree.

1.  *Standard of Review*

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.] . . .  We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the

9

evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) We may reverse a conviction for a lack of substantial evidence only if it appears ""that upon no hypothesis whatever is there sufficient substantial evidence"" to support the conviction. (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

2. *Analysis*

The jury properly convicted defendant of counts 3 through 20 if the People proved that he committed the offenses against N.B. through fear or duress. (See § 288a, subd. (b)(1); counts 3-6); § 289, subd. (a)(1)(B); counts 7 through 10); § 288, subd. (b)(1); counts 11-20). We conclude there is substantial evidence that defendant committed the offenses through fear and duress.

10

For purposes of defendant's offenses, "fear" has an objective and a subjective component. (*People v. Iniguez* (1994) 7 Cal.4th 847.) The subjective component "asks whether a victim genuinely entertained a fear of immediate and unlawful bodily injury sufficient to induce her to submit to sexual intercourse against her will." (*Id.* at p. 856.) The objective component "asks whether the victim's fear was reasonable under the circumstances, or, if unreasonable, whether the perpetrator knew of the victim's subjective fear and took advantage of it." (*Id.* at p. 857.)

N.B. testified that she was afraid when defendant abused her. She described her fear as a seven out of 10, with 10 being the most scared. She often cried during the abuse and felt like she had to do what defendant wanted. Defendant does not—and cannot— argue that N.B.'s fear was unreasonable, as any young child would reasonably fear for her safety if an adult family member sexually assaulted her. We therefore conclude substantial evidence supports the jury's finding that defendant committed the offenses against N.B. through fear.

There is also substantial evidence that defendant committed the offenses through duress. Duress is "'a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' [Citations.]" (*People v. Leal* (2004) 33 Cal.4th 999, 1004-1005, 1010.) This definition is "objective in nature and not dependent on the response exhibited by a particular victim." (*People v. Soto* (2011) 51

11

Cal.4th 229, 246 (*Soto*).)  To evaluate duress, we look at "[t]he totality of the circumstances includ[ing] the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child."  (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072-1073.)

Duress can take the "'form of psychological coercion to get someone else to do something.'"  (*Soto*, *supra*, 51 Cal.4th at p. 243; see *People v. Cochran* (2002) 103 Cal.App.4th 8, 15 (*Cochran*), overruled on different grounds by *Soto*, *supra*, at p. 248, fn. 12.)  "Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes."  (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.)  Duress may also be established by "a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults."  (*Cochran*, *supra*, at p. 15.)

Here, defendant was middle-aged and N.B., his niece, was eight or nine years old when defendant began molesting her.  He abused N.B. for several years while they lived together, and told her not to tell anyone about the abuse because they would get in trouble if anyone found out.  When viewed objectively, the evidence was sufficient to permit the jury to reasonably conclude that defendant committed the offenses by placing N.B. under duress, particularly given that she was afraid to report the abuse, felt obliged to participate in it, and defendant told her she would get in trouble if she reported it.  (See

12

*People v. Veale* (2008) 160 Cal.App.4th 40, 48 ["'The very nature of duress is psychological coercion.'"]; see also *Soto*, *supra*, 51 Cal.4th at p. 243 ["A perpetrator may *use* duress . . . against a victim even if this conduct does not ultimately influence the victim's state of mind."])

Defendant's reliance on *People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*) does not alter our conclusion. In *Espinoza*, the defendant repeatedly molested his 12-year-old daughter on different occasions. (*Id*. at p. 1293.) She testified she was "'too scared to do anything'" while her father abused her, and was afraid to report the molestation because she thought he "'would come and do something.'" (*Id*. at pp. 1293-1294.) The *Espinoza* court held there was insufficient evidence of duress because the victim never testified the defendant used "any 'direct or implied threat' of any kind." (*Id*. at p. 1321.) In reaching this conclusion, the *Espinoza* court relied on *People v. Hecker* (1990) 219 Cal.App.2d 1238 (*Hecker*), which broadly held that "'"[p]sychological coercion" without more does not establish duress. At a minimum there must be an implied threat of "force, violence, danger, hardship or retribution."'" (*Id*. at p. 1321.)

Later decisions have cast doubt on *Espinoza* and *Hecker*. The same court that decided *Hecker* later explained in that some of "th[e] language in *Hecker* is overly broad" because "[t]he very nature of duress is psychological coercion." (*Cochran*, *supra*, 103 Cal.App.4th at p. 15, overruled on different grounds by *Soto*, *supra*, 51 Cal.4th at p. 246, fn. 12; accord, *People v. Veale*, *supra*, 160 Cal.App.4th at pp. 48-50.) More importantly, our Supreme Court later approved a definition of duress in child molestation cases more

in line with *Cochran*, describing duress as "'us[ing] some form of psychological coercion to get someone else to do something.'" (*People v. Soto*, *supra*, at p. 243.) *Espinoza* and *Hecker* therefore do not persuade us that defendant committed his offenses against N.B. without duress.

C. *Separate Life Sentences on Counts 11 through 20*

Defendant contends the trial court erroneously imposed separate 15-years-to-life sentences on counts 11 through 20. We disagree.[3]

Former section 667.61, which was in effect when defendant committed his offenses against N.B. between 2002 and 2006, mandated an indeterminate sentence of 15 years to life for violations of section 288, subd. (b)(1) (counts 11 through 20). (See former § 667.61.) Former section 667.61, subdivision (g) provided that multiple sentences imposed under section 667.61 "shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion."

In other words, the statute provided for "separate terms for offenses committed on each single occasion." (*People v. Jackson* (1998) 66 Cal.App.4th 182, 193.) "[S]ex offenses occur[] on a 'single occasion' if they were committed in close temporal and spatial proximity." (*People v. Jones* (2001) 25 Cal.4th 98, 107, superseded on other grounds as stated in *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1307.) For instance, in *Jones*, our Supreme Court held that the defendant should have received

---

[3] We assume without deciding that defendant did not forfeit the argument, as the People contend, and address it on the merits.

"*single* life sentence, rather than *three* consecutive life sentences, for a sequence of sexual assaults … against one victim that occurred during an uninterrupted time frame and in a single location." (*People v. Jones*, *supra*, at p. 107.)

Here, defendant committed his offenses against N.B. during a four-year period. Defendant molested N.B. many times and in different locations in the house, including in the bathroom, her bedroom, "in the garage, in the living room, on the side by the refrigerator, and . . . the backroom." Defendant abused N.B. multiple times in the bathroom and multiple times in her bedroom at night. In fact, N.B. began wearing pants to bed instead of a nightgown when defendant stayed overnight because she feared he would abuse her, which "[h]e still continued to do." N.B. put on more layers of clothing while sleeping to prevent defendant's abuse, but the abuse persisted.

N.B.'s testimony shows that defendant repeatedly abused her over a four-year period in at least six locations in the house. In two of those location, the bathroom and N.B.'s bedroom, defendant abused her multiple times. The record thus supports a finding that defendant abused N.B. on at least ten occasions within the meaning of section 667.61, subdivision (g). The trial court therefore properly imposed separate 15-years-to-life sentences on counts 11 through 20.

D. *Consecutive Life Sentences on Counts 11 through 20*

Defendant contends the trial court erroneously sentenced defendant to consecutive 15-years-to-life sentences on counts 11 through 20. We disagree.[4]

Section 667.6, subdivision (e) applies to, among other crimes, any "[l]ewd or lascivious act, in violation of subdivision (b) of [s]ection 288," such as defendant's offenses in counts 11 through 20. (§ 667.6, subd. (e)(5).) Section 667.6, subdivision (d) requires that "[a] full, separate, and consecutive term shall be imposed for each violation of an offense in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate occasions . . . the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior." We will reverse the imposition of consecutive terms under section 667.6 "only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

As explained above, defendant molested N.B. repeatedly over a four-year period. He abused her in at least six locations throughout the house at different times, and did so multiple times in the bathroom and in N.B.'s bedroom. On this record, a reasonable trier

---

[4] We assume without deciding that defendant did not forfeit the argument, as the People contend, and address it on the merits.

of fact could have found that defendant had a reasonable opportunity for reflection after assaulting N.B. before doing it again. The trial court therefore properly imposed consecutive sentences on counts 11 through 20.

E. *Fines, Fees, and Assessments*

At sentencing, defendant asked the trial court to strike all fines and fees or to impose the statutory minimums because he could not afford to pay them. The trial court imposed the statutory minimums, consisting of a $300 restitution fine (§ 1202.4), a $300 sex offender registration fine, a $514.58 booking fee (Gov. Code, § 29550), $800 in court operations assessments (§ 1465.8), and a $600 in criminal conviction assessment (Gov. Code, § 70373). The trial court also imposed and stayed a $300 parole revocation fine (§ 1202.45) and ordered defendant to pay a $1,095 fee for his presentence report. Excluding the stayed $300 parole revocation fine, the trial court ordered defendant to pay $3,609.58 in fines, fees, and assessments, reasoning that defendant could pay the minimum amounts given "the length of time and the amounts that he will be earning while in . . . custody."

"[I]t is the defendant's burden to demonstrate an inability to pay, not the prosecution's burden to show the defendant can pay." (*People v. Santos* (2019) 38 Cal.App.5th 923, 934.) Thus, "a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.)

17

Defendant failed to do so in the trial court.  Defendant asked the trial court "to set the minimum based on ability to pay or strike them where the Court can do so," but made no effort to explain why he could not pay the fines, fees, or assessments.  After the trial court announced its sentence, including its imposition of the fines, fees, and assessments, defendant did not argue he could not pay them.  Nor did he try to explain why he could not afford then.  We therefore conclude defendant failed to meet his burden of showing that he had no ability to pay the fines, fees, and assessments.  Thus, the trial court did not err in imposing them.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


CODRINGTON_____
Acting P. J.

We concur:


SLOUGH_____
J.


RAPHAEL_____
J.

18