Filed 11/26/25  P. v. Rojas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D084251 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF2104454) |
| ESTEBAN SOTO ROJAS, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Riverside County, James S. Hawkins, Judge.  (Retired Judge of the Riverside Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christoper P. Beesley and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Esteban Soto Rojas of committing one count of a lewd act on a child (Pen. Code,[1] § 288, subd. (a)), four counts of a forcible lewd act on a child (§ 288, subd. (b)(1)), and two counts of forcible sexual penetration of a child (§ 269, subd. (a)(5)).

Rojas raises three issues on appeal. First, he argues the evidence of force, fear or duress was insufficient to support the four counts of aggravated lewd acts on a child. Second, he argues the victim's forensic interview statements were improperly admitted as prior consistent statements. Third, he argues the trial court was required to instruct on sexual penetration of a minor as a lesser included offense of aggravated sexual penetration of a minor. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Prosecution Evidence*

Jane Doe was 15 years old when she testified against Rojas, her uncle. Jane, along with her parents, brother, three sisters, Rojas and other extended family members spent time together almost every weekend at Jane's grandmother's house. The children would sometimes be alone with Rojas while other adults were outside on the back porch.

When Jane was eight or nine years old, Rojas started touching her over her clothes at first and then under them. Once, when she was alone in a room, Rojas entered and grabbed her from behind, squeezing her breasts and touching her vagina. She was afraid to say anything because, in her words, "he was an adult, and I was a child."

---

[1] Unless specified, further statutory references are to the Penal Code.

Before she was 12, Rojas began showing Jane videos of men and women having sex and told her, "It feels good." While showing Jane the videos, Rojas would touch her vagina over her clothing.

On another occasion, again before the age of 12, Jane was sitting on the couch at her grandmother's house talking on the phone when Rojas sat down next to her. Jane testified that she "got up and tried walking away," but "[h]e put his hand on my shoulder and sat me down." When asked if "he physically grabbed your body and made you sit down," she replied "Yes." Rojas then told her, "It's going to be okay." He then placed his hand on her groin area next to her vagina. Jane said she was going to tell her parents and Rojas responded, "No, you won't. You're a pussy," and walked away. She went outside but did not tell anyone because she feared no one would believe her.

When Jane was 12 years old, sometime between 2020 and 2021, she was at Rojas's house playing Minecraft in the living room with Rojas's son, when Rojas told his son to go to his room. She testified, "He told me to sit down. And when I sat down, he closed the front door, and he started putting his fingers under my clothes. And he was touching me on my bottom part." Rojas reached under Jane's clothing and touched her vagina, ultimately inserting his finger inside her vagina and moving it up and down and in and out for seven or eight minutes. She was scared and "felt pain." Rojas only stopped when Jane's sister knocked on the front door. She did not say anything because she was afraid no one would believe her.

The abuse occurred again at Rojas's house when Jane was 13 years old, with Rojas once more reaching under her clothing and inserting his finger into her vagina and moving it up and down and in and out.

Weekly abuse also took place at her aunt's apartment, which was next to Rojas's apartment. Every time Jane visited, Rojas touched her breasts or vagina or put his fingers in her vagina.

The last incident occurred in 2021, when Jane went to a movie theater with her brother and Rojas and his son. Rojas sat next to Jane and began rubbing her thigh and her vagina over her clothing during the movie. She was scared "[b]ecause he was going to do what he normally did again" and because "he was an adult [and] I was a kid." Rojas only stopped when Jane pushed his arm away. She did not say anything because Rojas called her a pussy and said no one would believe her.

Jane eventually disclosed the abuse to her mother, her sisters, her cousin, her Spanish teacher and a school counselor. Somebody from the school called Child Protective Services.

In October 2021, a social worker conducted a forensic interview of Jane. A police officer attended the interview and testified about Jane's statements during the interview. Concerning the incident when Jane was at her grandmother's house on the phone, after Rojas sat down next to her, "[s]he attempted to get off the couch, to get up and leave the room, and [Rojas] grabbed her by the shoulder and pushed her back into a seated position on the couch." Similarly, when Jane was at Rojas's house playing Minecraft with Rojas's son, "[s]he tried to get up off the couch, [Rojas] pushed her back onto the couch, touched her breast under the clothing and then digitally penetrated her vagina under her clothing." The officer further testified Jane made statements about the abuse at Rojas's house and that Rojas "raised his hand in the air and she believed he would strike her."

A clinical and forensic psychologist testified as an expert witness on child sexual abuse accommodation syndrome (CSAAS). The syndrome

4

describes a pattern of behaviors exhibited by children who have been sexually abused. It addresses the myth that children "would report the sexual abuse right away and do everything they could to get out of a sexually abusive relationship." Children tend to accommodate the abuse, because they cannot find a way out of the situation, particularly when the abuser is someone they love and because they fear a report of the abuse will break the family apart. They may also suppress memories as a way of coping.

## II.

### *Defense Evidence*

Rojas presented character witnesses who testified generally that he was a good person and would not be sexually interested in or sexually abuse young girls. His relatives testified he was never alone with Jane. At family gatherings, he would be in his room or another relative's room playing video games.

Rojas's mother-in-law (Jane's grandmother) testified about a problem between her and her daughter (Jane's mother), which began when Rojas took his mother-in-law out to dinner for her birthday. Jane's mother did not join and then became "upset" and "no longer spoke to us." The problem began days before the allegations against Rojas came out. Meanwhile she described Jane as "very feisty," "very aggressive" and that she "likes to fight."

Rojas's son testified Jane did not play video games and there was never an occasion when Rojas told him to go to his room when Jane was present. Additionally, Jane invited herself to go to the movie theater with Rojas, his son and her brother, and then she told Rojas to sit next to her. During the movie, he noticed Rojas "fell asleep" because he "heard snoring." He described Jane as a "tomboy" who was "aggressive" and "acted like a boy and tried to fight us sometimes."

5

DISCUSSION

I.

*Sufficient Evidence Supported Rojas's Aggravated Lewd Act Convictions*

A.      *Legal Principles*

"[I]n reviewing a challenge to the sufficiency of the evidence, the relevant inquiry is whether, on review of the entire record in the light most favorable to the judgment, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." (*People v. Young* (2005) 34 Cal.4th 1149, 1180.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Every reasonable inference is drawn in favor of the jury's verdict. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13.) The testimony of a single witness suffices to support a factual finding unless the testimony is inherently improbable or physically impossible. (*Young* at p. 1181.) "[I]t is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054 [cleaned up].)

A defendant is guilty of violating section 288, if he "willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child," and does so "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or

6

another person." (§ 288, subds. (a), (b)(1).) " '[D]uress' as used in section 288, subdivision (b)(1)," " 'means a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1004, 1006, italics omitted; CALCRIM No. 1111.) "[D]uress is measured by a purely objective standard . . . . [T]he focus must be on the defendant's wrongful act, not the victim's response to it." (*People v. Soto* (2011) 51 Cal.4th 229, 246 (*Soto*).)

The trial court instructed the jury with CALCRIM No. 1111 regarding the statutory meaning of duress. The jury was instructed that an act is "accomplished by fear if the child is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it." The jury was further instructed that "[d]uress means the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do or submit to something that she would not otherwise do or submit to," and "[w]hen deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the child and her relationship to the defendant."

B.    *Analysis*

Rojas claims the evidence is insufficient to support the jury's conclusion that he committed all aggravated lewd acts on Jane by force, fear, or duress. Specifically, he challenges the sufficiency of the evidence of force, fear or duress with respect to the incident that took place after Jane had been playing Minecraft with Rojas's son, and the incident at the movie theater. Although Rojas claims there was no evidence of fear, force or duress in either

7

incident, we consider the pattern of duress present throughout each aggravated lewd act he committed.

"In determining whether a sexual offense was accomplished by duress, the trier of fact must consider the totality of the circumstances, including the victim's age and relationship to the defendant." (*People v. Martinez* (2024) 105 Cal.App.5th 178, 189 (*Martinez*).) A rational trier of fact can find duress if it decides that the "inherent imbalance of power in an encounter between a child and an adult bent on sexual conduct" presented in the charged incident. (*Soto, supra*, 51 Cal.4th at pp. 245–246.)

Here, there was substantial evidence the challenged offenses were accomplished by duress. Rojas was Jane's uncle, Jane was "super close" to Rojas's son, and their extended family members visited together almost every weekend at Jane's grandmother's house. Due to the criminal case, however, the two families became estranged with Jane's family being "always sad and worried." Jane also testified that she was afraid to say anything to Rojas during the molestation because she was eight when he began molesting her and he was an adult. Jane viewed Rojas as a trusted family member who exercised authority over the children by virtue of his age and status within the family and the jury could reasonably conclude that he took advantage of this dynamic in perpetrating the challenged offenses by means of duress. (See *Martinez, supra*, 105 Cal.App.5th at p. 189 ["Where the defendant is a family member and the victim is young, the position of dominance and authority of the defendant and his continuous exploitation of the victim is relevant to the existence of duress." (Cleaned up.)].)

Although the challenged offenses did not involve overt threats of force, we consider the totality of the circumstances, including the "continuous exploitation of the victim." (*Martinez, supra*, 105 Cal.App.5th at p. 189

8

[cleaned up].) Considering the totality of the circumstances, Jane would have had the prior incidents in mind when each new molestation took place. Jane would have recalled that when she tried to leave the couch, Rojas grabbed her shoulder and pushed her back down and that, on another occasion, he had raised his hand as though to hit her. She would have felt resistance was futile and feared Rojas would employ force to overcome her resistance. Thus, her acquiescence was not evidence that duress was absent, but evidence that Rojas employed it effectively. (See *id* at pp. 190–191; see also *People v. Senior* (1992) 3 Cal.App.4th 765, 776 ["[T]he first molestation set the stage for later molestations. The first one involved a threat to hit her if she resisted and other threats to hurt her and break up the family unit if she told."].)

Considering the totality of the circumstances, substantial evidence supports that Rojas used his position as a trusted family member along with implied threats of force to coerce Jane into acquiescing to the abusive acts. (See *People v. Veale* (2008) 160 Cal.App.4th 40, 46–47; accord, *People v. Cochran* (2002) 103 Cal.App.4th 8, 15–16 [duress present in father's molestation of his nine-year-old daughter despite absence of violence or threats where the victim was a "vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority"].) "We must accept logical inferences that the [factfinder] might have drawn from the circumstantial evidence. . . . Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357–358 [cleaned up].)

9

II.

*Jane's Forensic Interview Statements Were Properly Admitted*

A.    *Additional Background*

Before trial, the prosecution filed a motion in limine arguing that witnesses' prior consistent statements during interviews with law enforcement would be admissible if the defense implied during cross examination the testimony was recently fabricated.  The court reserved its decision on the motion until trial.

Before the prosecutor recalled the police officer who listened to Jane's forensic interview, defense counsel argued the prosecutor should not be allowed to "try the defendant by how many times the victim said the same thing."  The prosecutor responded that the statements were admissible because defense counsel insinuated during cross-examination that Jane's testimony was fabricated.  As to the timing of the statements, the prosecutor relied on *People v. Williams* (2002) 102 Cal.App.4th 995 and argued that the necessary foundation was present.  Defense counsel responded that *Williams* was distinguishable because it involved a claim of recent fabrication, while Rojas alleged the fabrication occurred when Jane talked to her mother, sisters and cousin, prior to the forensic interview.  The trial court denied Rojas's request to exclude Jane's forensic interview statements as prior consistent statements.

B.    *Analysis*

Rojas contends the statements from Jane's forensic interview were not prior consistent statements within the meaning of Evidence Code section 791 and should have been excluded.  We disagree.

A trial court's decision to admit evidence as a prior consistent statement under Evidence Code section 791 is reviewed for an abuse of

10

discretion.  (*People v. Kopatz* (2015) 61 Cal.4th 62, 85 (*Kopatz*).)  "A trial court has abused its discretion when its ruling falls outside the bounds of reason."  (*Ibid*. [cleaned up].)  Evidence Code section 791 permits evidence of a witness's prior statement "consistent with" his or her trial testimony "to support [the witness's] credibility" if offered:  (1) following admission of a prior inconsistent statement to "attack[ ] . . . credibility," if the consistent statement was made before "the alleged inconsistent statement"; or (2) to rebut "[a]n express or implied charge" the witness's trial testimony "is recently fabricated or is influenced by bias or other improper motive," if the consistent statement was made before the alleged bias or improper motive arose.  (Evid. Code, § 791.)  "Evidence Code section 791 permits the admission of a prior consistent statement when there is a charge that the testimony given is fabricated or biased, not just when a particular statement at trial is challenged."  (*People v. Kennedy* (2005) 36 Cal.4th 595, 614.)

Rojas predicated his defense on the notion that Jane's trial testimony was fabricated.  Defense counsel insinuated her testimony was based on the forensic interview used to refresh her recollection rather than her independent recollection.  Defense counsel's cross-examination focused on her disclosure to her sisters and cousin prior to disclosing to her counselor and ultimately the police.  Defense counsel sought to elicit testimony that Jane and her cousin developed a "plan" regarding the circumstances of their disclosure.  Defense counsel also noted during cross-examination that Jane did not call 911 or tell any of her sisters immediately after the incidents occurred.  Defense counsel's broad, implicit charge of fabrication allowed the prosecutor to seek admission of Jane's prior interview statements that were consistent with her testimony.  (*Kopatz, supra*, 61 Cal.4th at p. 84.)

Rojas nevertheless argues that Jane's statements were not made "before the bias, motive for fabrication, or other improper motive [was] alleged to have arisen." (Evid. Code, § 791, subd. (b).) Rojas alleges the improper motive arose when Jane and her cousin and sisters disclosed to one another and discussed the abuse amongst themselves prior to disclosing to the authorities. The Attorney General counters that the prior consistent statements were admissible pursuant to the judicially created exception discussed in *People v. Lopez* (2013) 56 Cal.4th 1028 (*Lopez*). The *Lopez* opinion holds that when "a witness's silence is presented as inconsistent with his or her later testimony, a statement made at the earliest opportunity after the silence that is consistent with the witness's later testimony may be admissible as a prior consistent statement under [Evidence Code] section 791[, subdivision] (b)." (*Lopez,* at p. 1067.) The exception is typically invoked in cases where the victim's initial silence is attributable to incapacity, and *Lopez* recognizes that it is possible for someone to be incapacitated by "fear of repercussions from [the] defendant." (*Id*. at p. 1068.)

Here, the evidence supports that Jane suffered from an incapacity due to the fear she had of repercussions from Rojas. The dynamics of her extended family, the age difference and relationship of trust she had with her uncle and the fear generated by his apparent authority over her prevented Jane from reporting the abuse earlier. As she testified, "I didn't do anything because I was afraid. And like I said, he would tell me no one would believe me. He would call me a pussy, and that would lower my self-esteem down." The CSAAS evidence similarly explained the myth that children "report the sexual abuse right away and do everything they could to get out of a sexually abusive relationship." Jane did not feel safe to tell her story until the forensic interview when she was free from the influence of Rojas and other

12

family members.  (See, e.g., *Lopez*, *supra*, 56 Cal. 4th at p. 1068 [the victim "may not have been inclined to alert defendant's relatives . . . for fear of repercussions from defendant.  Once she was no longer incapacitated by fear of defendant, she" disclosed the offending conduct].)

Rojas also argues the statements that he pushed Jane onto the couch during the Minecraft incident and raised his hand as though to hit her in another incident added new information which she did not testify to at trial and were therefore not consistent with her trial testimony.  The claim is forfeited.  While Rojas objected to the questions that produced the testimony, he did so on Evidence Code section 352 and hearsay grounds.  Rojas never objected that Jane's statements from her forensic interview contained facts to which she had not testified.  Consequently, any challenge to the statement being beyond the scope of Jane's testimony is forfeited.  (See Evid. Code, § 353 [party may not complain on appeal that evidence is inadmissible absent a timely and specific objection on that ground below]; *People v. Chism* (2014) 58 Cal.4th 1266, 1293 [because a timely and specific objection to the erroneous admission of evidence "could have prevented the asserted prejudice and nothing suggests it would have been futile for defendant to object on this specific ground in the trial court, this claim is forfeited on appeal"].)

Even had the trial court erred in admitting Jane's interview statements, any error was harmless.  (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)  The forensic interview statements were largely cumulative of Jane's description of the incidents on direct examination.  (See *People v. Arias* (1996) 13 Cal.4th 92, 153 ["it is not reasonably probable that such erroneous admission affected the verdict"].)  Jane also testified on direct examination that Rojas shoved her on the couch during the telephone incident, and the

13

jury would have concluded his use of force there contributed to the duress she experienced during subsequent incidents.

## III.

*Sexual Penetration of a Minor Is Not a Lesser Included Offense of Aggravated Sexual Penetration of a Minor*

Rojas argues the trial court prejudicially erred by failing to instruct the jury that sexual penetration of a minor (§ 289, subd. (j)) is a lesser included offense of aggravated sexual assault of a child by sexual penetration (§ 269, subd. (a)(5)). We disagree.

"A trial court must instruct on all lesser included offenses supported by substantial evidence." (*People v. Duff* (2014) 58 Cal.4th 527, 561.) This obligation arises "whenever there is evidence in the record from which a reasonable jury could conclude the defendant is guilty of the lesser, but not the greater, offense." (*Ibid.*) " 'Substantial evidence' in this context is evidence from which a jury composed of reasonable persons could conclude that the lesser offense, but not the greater, was committed." (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*) [cleaned up].)

We review de novo whether the trial court erred by failing to instruct on a lesser included offense. (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.) We determine whether any error was prejudicial under *Watson*, *supra*, 46 Cal.2d 818. (See *Breverman*, *supra*, 19 Cal.4th at pp. 165, 169 [failure to instruct on lesser included offense is error of California law alone and therefore subject to state standards of reversibility].) Under this standard, the failure to instruct on a lesser included offense "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Breverman*, at p. 165.) In applying this standard, we focus "not on what a reasonable jury could do, but

14

what such a jury is likely to have done in the absence of the error under consideration." (*Id.* at p. 177, italics omitted.) We may consider, "among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Ibid.*, italics omitted.)

To determine whether one crime is necessarily included in another, courts "apply either the elements test or the accusatory pleading test." (*People v. Shockley* (2013) 58 Cal.4th 400, 404; see *People v. Robinson* (2016) 63 Cal.4th 200, 207 (*Robinson*).) " 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.' " (*Shockley*, at p. 404; see also *People v. Gonzalez* (2018) 5 Cal.5th 186, 197 ["Under the elements test, one offense is another's 'lesser included' counterpart if all the elements of the lesser offense are *also* elements of the greater offense."].) " 'Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.' " (*Shockley*, at p. 404.) "Consistent with the primary function of the accusatory pleading test . . . we consider *only* the pleading for the greater offense." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1036.) "When, as here, the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense." (*Robinson*, at p. 207; *Shockley*, at p. 404.)

Here, the information refers to the statutory elements of section 269, subdivision (a)(5), requiring this court to rely on the statutory elements. (See *Robinson*, *supra*, 63 Cal.4th at p. 207). Section 289, subdivision (j), provides:

"Any person who participates in an act of sexual penetration with another person who is under 14 years of age and who is more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years." Section 269, subdivision (a)(5), requires only a seven-year age difference between the defendant and the victim. Thus, section 289, subdivision (j), is not a lesser included offense of section 269, subdivision (a)(5), under the statutory elements test.

Even assuming instructional error occurred, it was harmless. Although Rojas claims a rational juror could have found he sexually penetrated Jane without force, fear, or duress, the jury was instructed on two lesser included offenses, sections 240 and 242, as alternatives to the forcible sexual penetration charge. If the jury found Rojas accomplished sexual penetration without force, fear, or duress, they would have found him guilty of one or both lesser offenses. They did not. The jury was instructed according to CALCRIM No. 3517 that "[i]f all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime." Jurors are presumed to understand and follow instructions. (*People v. Wilson* (2023) 89 Cal.App.5th 1006, 1014.)

## DISPOSITION

The judgment is affirmed.

DO, Acting P. J.

WE CONCUR:

BUCHANAN, J.

CASTILLO, J.