Filed 12/12/25  P. v. Santana CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DIEGO SANTANA,<br><br>    Defendant and Appellant. | D086346<br><br><br>(Super. Ct. No. INF2101134) |


APPEAL from a judgment of the Superior Court of Riverside County, Jerry C. Yang, Judge.  Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Flavio Nominati, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Diego Santana appeals from his 13-count sex crime conviction. Santana challenges nine counts (2, 4, 6, and 8–13), claiming insufficient

evidence supported the jury's findings that he committed those crimes by using force or duress. Finding substantial evidence of duress, we affirm.

## II. BACKGROUND

While she was between seven and 12 years old, Jane Doe lived in a house with her immediate and extended family, including Santana, who was in his early twenties. Santana was the brother of Doe's stepfather, and Doe called him "Uncle Diego."

During those years, Santana repeatedly sexually abused Doe while the two were alone in his bedroom. Santana raped and sodomized Doe, orally copulated Doe, touched Doe's chest with his mouth and hands, digitally penetrated Doe's vagina, and kissed Doe on the lips. Santana also made Doe masturbate him, suck his nipples, and orally copulate him.

Santana would move Doe's body to accomplish these acts. Sometimes Santana made Doe's head move back and forth while she orally copulated him, and he would push her head into his bare chest. Santana also positioned Doe's body how he wanted, he held her down on one or two occasions, and he yanked her hair in another.

Doe's body shook during the abuse. She was scared and Santana made her do things she did not want to do.

When Santana would disrobe Doe or tell her to take clothes off, Doe felt she had to obey. Despite knowing she would endure abuse, Doe complied when Santana called her into his room because Doe was afraid Santana would hurt her mother and brothers. Santana never explicitly threatened Doe or her family, but Doe still believed Sanatana might harm them. Santana was bigger, older, and stronger than Doe, he got mad at Doe and her brothers when they did not listen, and Doe feared angering Santana.

Ultimately, Doe grew tired of being violated, and her fear for herself and her family led her to disclose the abuse when she was 12. Doe first told her mother's friend, who then informed Doe's mother, and they reported Santana to the police that day.

Police arrested Santana and interviewed him at the police station. When asked if Doe's allegations of sexual abuse were true, Santana stated, "[u]nfortunately, yes." Santana then attempted to qualify his admission and asserted his right to counsel.

The Riverside County District Attorney's Office charged Santana with two counts of sexual intercourse or sodomy with a child who is 10 or younger (Pen. Code,[1] § 288.7, subd. (a); counts 1 & 3); two counts of oral copulation or sexual penetration of a child who is 10 or younger (§ 288.7, subd. (b); counts 5 & 7); one count of aggravated sexual assault against a child under 14 by rape (§§ 269, subd. (a)(1); 261, subd. (a)(2); count 2); one count of aggravated sexual assault against a child under 14 by sodomy (§§ 269, subd. (a)(3); 286, subd. (c)(2); count 4); one count of aggravated sexual assault against a child under 14 by sexual penetration (§§ 269, subd. (a)(5); 289, subd. (a); count 6); one count of aggravated sexual assault against a child under 14 by oral copulation (§§ 269, subd. (a)(4); 287, subd. (c)(2); count 8); and five counts of lewd acts on a child under 14 (§ 288, subd. (b)(1); counts 9–13). Counts 2, 4, 6, and 8–13 alleged that Santana committed the acts by using force, violence, duress, menace or fear of bodily injury.

---

[1]     All further undesignated statutory references are to the Penal Code.

3

The jury found Santana guilty of all 13 counts. The trial court sentenced Santana to 180 years to life in prison.[2] Santana's timely appeal followed.

## III. DISCUSSION

### A. *Standard of Review*

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Veale* (2008) 160 Cal.App.4th 40, 45 (*Veale*).) Accordingly, the "defendant bears an enormous burden in claiming there is insufficient evidence to sustain his molestation convictions," and "[i]f the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves." (*Id.* at p. 46.)

### B. *There Was Sufficient Evidence That Santana Accomplished Counts 2, 4, 6, and 8–13 by Duress*

#### 1. Duress

To be guilty of counts 2, 4, 6, and 8–13, Santana had to commit the acts by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" on the victim or another. (§§ 269, subd. (a)(1), (3), (4) & (5); 261, subd. (a)(2); 286, subd. (c)(2); 287, subd. (c)(2); 289, subd. (a); 288, subd. (b)(1).) " 'The very nature of duress is psychological coercion.' " (*People*

---

2    Santana received 25-year-to-life terms for counts 1 and 3, 15-year-to-life terms for counts 2 and 4–8, and 8-year terms for counts 9–13.

*v. Barton* (2020) 56 Cal.App.5th 496, 518.) It is defined as " ' "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' " (*People v. Soto* (2011) 51 Cal.4th 229, 246, italics omitted.)[3]

To determine if the defendant used duress, we look at "[t]he totality of the circumstances includ[ing] the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072 (*Thomas*).)

For example, " '[d]uress can arise from . . . the relationship between the defendant and the victim and their relative ages and sizes. [Citations.] "Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress.' " (*Veale*,

---

[3] As noted by Santana for the first time in his reply brief, the trial court instructed the jury with an outdated version of CALCRIM No. 1111, the pattern instruction for lewd acts under section 288, subdivision (b)(1). The trial court instructed the jury that "*[d]uress* means a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do or submit to something that he or she would not otherwise do or submit to." The current version of CALCRIM No. 1111 states, "*[d]uress* means *the use of* a direct or implied threat of force, violence, danger, hardship, or retribution *sufficient to cause* a reasonable person to do [or submit to] something that he or she would not otherwise do [or submit to]." (Original italics omitted, italics added.) Nonetheless, Santana does not seek reversal on this ground, and we do not believe failing to use the current version of CALCRIM No. 1111 effected the outcome in this case.

5

*supra*, 160 Cal.App.4th at p. 49.) Duress can also be shown by "a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 15.) Further, "[t]he fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress." (*Thomas, supra,* 15 Cal.App.5th at p. 1072.)

     2.    <u>Santana's Supporting Authority</u>

Santana compares his case to, or distinguishes it from, three appellate decisions: *Schulz*,[4] *Veale*, and *Espinoza*.[5]

*Schulz* involved an uncle who molested his niece numerous times when she was between the ages between six and 10. (*Schulz, supra*, 2 Cal.App.4th at pp. 1002–1004.) In one incident, when the niece was between seven and eight, the uncle grabbed the niece's arm, and the niece ran to the corner of the room where she screamed and cried while the uncle fondled her. (*Id.* at p. 1003.) The court found sufficient evidence of duress in this incident because the uncle "took advantage not only of his psychological dominance as an adult authority figure, but also of his physical dominance to overcome her resistance to molestation." (*Id.* at p. 1005.)

In *Veale*, the seven-year-old victim testified that her stepfather did not threaten her or use physical force when he repeatedly molested her while the two were alone in her or the stepfather's bedroom. (*Veale, supra,* 160 Cal.App.4th at pp. 46–47.) On at least one occasion, the bedroom door was locked, and on two occasions the victim got angry, preventing the abuse. (*Ibid.*) The victim feared that if she told anyone about the abuse, her

---

4    *People v. Schulz* (1992) 2 Cal.App.4th 999 (*Schulz*).

5    *People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*).

stepfather would kill her or her mother. (*Id*. at p. 47.) From this evidence, the court determined that "[a] reasonable inference could be made that defendant made an implied threat sufficient to support a finding of duress." (*Ibid*.) The court relied on the victim's perceived threat of harm, the age and size disparity between the victim and the stepfather, and the stepfather's position of authority. (*Ibid*.)

In *Espinoza*, the defendant molested his 12-year-old stepdaughter, who had limited intellectual abilities, on five occasions. (*Espinoza*, *supra*, 95 Cal.App.4th at pp. 1292–1293.) The victim testified that she was " 'too scared to do anything' when defendant was molesting her," and she "was afraid that defendant 'would come and do something' if she reported the molests." (*Id*. at p. 1293.) The court found insufficient evidence of duress because the "defendant simply lewdly touched and attempted intercourse with a victim who made no oral or physical response to his acts." (*Id*. at p. 1320.) The court explained that "[w]hile it was clear that [the victim] was afraid of defendant, no evidence was introduced to show that this fear was based on anything defendant had done other than to continue to molest her." (*Id*. at p. 1321.)

Santana distinguishes his case from *Schulz* and *Veale*, arguing that Doe did not demonstrate any resistance. Santana also asserts that unlike *Veale*, but like *Espinoza*, there was no evidence that he directly or impliedly threatened Doe. Santana relies on the trial court's ruling regarding aggravating sentencing factors where it stated, "I don't find that there were any threats of great bodily harm." Santana further contends that he was a young adult with no familial relationship to Doe, Doe was older than the victim in *Veale* during some of the abuse, and Santana's door was never locked.

### 3.  Analysis

Contrary to Santana's claims, he had a familial relationship with Doe. Santana was the brother of Doe's stepfather, Doe called Santana "Uncle Diego," and the two lived in the same house.  And despite being young, Santana was nonetheless an adult who was bigger and stronger than Doe. The evidence also suggested Santana had authority in the home because he would get angry at Doe and her brothers when they did not listen.

Although Doe was 12 years old for some of the abuse, Santana began exploiting her when Doe was seven and continued to do so for approximately five years.  As such, this case is more like *Shulz* and *Veale*, where "[b]ecause of [Doe's] young age, [Doe] was more susceptible to being coerced through fear and due to defendant's position of authority."  (*Veale*, *supra*, 160 Cal.App.4th at pp. 49–50.)

As for Doe's resistance, that is merely one factor to be considered under the totality of the circumstances.  (*Thomas, supra,* 15 Cal.App.5th at p. 1072.) Accordingly, that Doe did not cry and scream like the victim in *Shulz* or get mad like the victim in *Veale* does not necessarily defeat a finding of duress. Further, resistance could be inferred from some of the evidence.  In some instances, Santana had to manipulate Doe's body, which was shaking. Santana occasionally positioned Doe, moved her head back and forth, held her down, and yanked her hair.  This indicates that Doe resisted at least some of Santana's acts.

Turning to threats, Doe's situation is like *Veale* where there were no explicit threats, but the court still found an implied threat based in part on the victim's fear that the defendant would harm her or her mother. (*Veale*, *supra*, 160 Cal.App.4th at p. 47.)  Similarly in this case, Doe feared that Santana would harm her brothers or her mother.  And unlike *Espinoza*, Doe's

8

fear was not just based on the continued sexual abuse. In addition, Doe observed Santana get angry when she and her brothers did not listen to him.

Doe also repeatedly stated that she was scared, and that Santana "made" or "makes" her perform the various sexual acts, which is indicative of an implied threat. (See, e.g., *People v. Pitmon* (1985) 170 Cal.App.3d 38, 47–48 [finding duress despite victim's denial of threats because the victim "had consistently stated defendant had 'made' him engage in the prohibited sex acts"].) Further, as noted above, Santana asserted physical control over Doe at times by manipulating her body. "Physical control can create 'duress' without constituting 'force.'" (*Schulz, supra*, 2 Cal.App.4th at p. 1005.)

Regarding the trial court's finding that the crimes did not involve threats, the trial court appeared to be addressing express threats of great bodily harm. Duress may exist when there is an implied threat of hardship or retribution. (*People v. Soto, supra,* 51 Cal.4th at p. 246.) Further, the trial court's finding is not controlling under the substantial evidence standard. " ' " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court [or any other court], that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " ' " (*People v. Jones* (2013) 57 Cal.4th 899, 961.)

Finally, Santana is correct that he did not abuse Doe behind a locked door, as Santana's bedroom had no door. But the doorway was covered by a sheet or blanket that prevented anyone from seeing or hearing what happened inside of Santana's room. Hence, Santana still isolated Doe in his room to accomplish the abuse.

Under the totality of these circumstances, there was sufficient evidence of duress. Based on the disparity between Santana and Doe's ages and sizes,

9

their familial relationship, Santana's use of isolation and physical control throughout his continued exploitation of Doe, Doe's observations of Santana's anger when she or her brothers misbehaved, and Doe's belief that Santana would harm her family, the jury could reasonably infer that Santana impliedly threatened retribution to accomplish the acts in counts 2, 4, 6, and 8–13.[6]

## IV. DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

McCONNELL, P. J.

KELETY, J.

---

[6] Finding sufficient evidence of duress, we do not consider whether Santana's acts were committed by force.